730 So.2d 432 (1999)
Craig DUCOTE, et al.
v.
KOCH PIPELINE CO., L.P., et al.
No. 98-C-0942.
Supreme Court of Louisiana.
January 20, 1999.
Order Granting Rehearing in Part and Modifying Opinion February 26, 1999.
*434 John A. Bivins, Lafayette, for Applicant.
James Eugene Mixon, James L. Pate, LaBorde & Neuner, Lafayette, Darrel Dee Ryland, Marksville, Russel L. Potter, Andrew Parker Texada, Stafford, Stewart & Potter, Alexandria, Joseph Blaise Treuting, Marksville, Daniel James Caruso, Douglas Watson Redfearn, New Orleans, Jerry Ryals Humble, Jonesville, for Respondent.
Ralph Shelton Hubbard, III, New Orleans, Laura A. Foggan, Washington, DC, Daniel E. Troy, Kevin Lyskowski, for Amicus Curiae Insurance Environment Litigation.
Harry Alston Johnson, III, Shreveport, Richard Nelson Dicharry, New Orleans, for Amicus Curiae Certain London Market Ins. and Certain Underwriters of Lloyd.
William Thomas D'Zurillan, James Louis Weiss, New Orleans, Kelly J. Kirkland, Jack O'Neill, Byron C. Keeling, Houston, TX, for Amicus Curiae American Petroleum Institution.
Francis S. Craig, III, Dominguez Hills, CA, Emile C. Rolfs, III, Luis Arturo Leitzelar, Baton Rouge, for Amicus Curiae Vicksburg Chemical Co. and Cedar Chemical Corp.
Colleen Noel Wertz, Baton Rouge, for Amicus Curiae James H. "Jim" Brown and Louisiana Dept. of Ins.
Philip Edward Downer, III, Robert William Kyle, Timothy Wayne Wilhite, Shreveport, for Amicus Curiae TE Products Pipeline Co.
John A. MacDonald, Amy Bach, for Amicus Curiae United Policyholders.
George Bartlett Hall, Jr., New Orleans, for Amicus Curiae Agricultural Ins. Co. and American Nat. Fire Ins.
James R. Sutterfield, New Orleans, for Amicus Curiae Reliance Nat. Ins. Co.
Frederick Theodore Haas, III, New Orleans, for Amicus Curiae RLI Ins. Co.
Edward P. Lobman, New Orleans, Arthur F. Brandt, Chicago, IL, for Amicus Curiae Westchester Fire Ins. Co.
Marcy V. Massengale, New Orleans, for Amicus Curiae American Petroleum Institute.
TRAYLOR, Justice.[*]

FACTS
Gulf Central Pipeline Company (Gulf Central), a wholly owned subsidiary of Koch Industries, Inc., owns and operates an ammonia transmission line which runs through part of Avoyelles Parish. On May 25, 1995, Gulf Central contracted with Stan Delancy (Delancy), d/b/a Delancy Enterprises, to cut the grass on the right-of-way along the pipeline. In the written contract, Delancy agreed to defend, protect, indemnify and hold Gulf Central harmless from and against all claims arising out of the work of Delancy or its subcontractors. The contract further required Delancy to obtain liability insurance *435 for Gulf Central and other Koch Pipeline subsidiaries.
Delancy purchased a comprehensive general liability policy from American Central Insurance Company (American Central), a Commercial Union Company, through the assistance of Troy & Nichols Insurance Agency. On June 7, 1995, an employee of Troy & Nichols Insurance Agency sent Delancy a letter with an endorsement specifically stating that Gulf Central had been added as an additional named insured. On July 7, 1995, a certificate of insurance was issued in favor of Koch Pipeline, through its former subsidiaries, stating that the Commercial Union policy was no more restrictive than that provided by standard coverage. After Gulf Central merged into Koch Pipeline, L.P. on July 31, 1995, Koch Pipeline, L.P. assumed all of the assets, liabilities, and contractual obligations of Gulf Central. Delancy later subcontracted the grass mowing work to Alexander & Ainsworth Contractors, which was insured by First Financial Indemnity Company (First Financial).
On September 11, 1995, an employee of Alexander & Ainsworth was cutting the grass with a tree cutter tractor when the tractor overturned and the tractor's bushhog blade struck the pipeline, releasing anhydrous ammonia into the atmosphere. Craig and Ramona Ducote subsequently filed suit alleging that Ramona Ducote sustained personal injuries as a result of the ammonia exposure. The pipeline operator, Koch Pipeline, L.P., filed a cross-claim and third party demand against Delancy, Alexander & Ainsworth, First Financial, American Central, Commercial Union Insurance Company (Commercial Union), and Troy & Nichols Insurance Agency seeking indemnification or contribution for all damages arising out of the incident. First Financial, American Central, and Commercial Union denied coverage based upon their policies' pollution exclusions, which preclude coverage with respect to:
Bodily injury or property damage which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
* * * * * *
Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.
After all parties were joined, multiple motions for summary judgment were filed concerning insurance coverage.
On July 15, 1997, the trial court granted partial summary judgment in favor of Delancy and Koch Pipeline, L.P. holding that the total pollution exclusion endorsement contained in both the American Central and First Financial policies did not exclude coverage for the claims alleged. The Third Circuit Court of Appeal affirmed, reasoning that pollution exclusions do not apply to accidental releases of pollutants by businesses which are not active industrial polluters. We reverse.

LAW
An insurance policy is an agreement between the parties and should be interpreted by using the general rules of contact interpretation as set forth in the Louisiana Civil Code. Ledbetter v. Concord Gen. Corp., 95-0809 (La.1/6/96); 665 So.2d 1166, 1169; Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94); 632 So.2d 736. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Louisiana Ins. Guar. v. Interstate Fire, 93-0911 (La.1/14/94); 630 So.2d 759, 763. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. La. Civ.Code art.2045; Ledbetter v. Concord Gen. Corp., 665 So.2d at 1169; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180. However, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ.Code art.2046. Such intent is to be determined *436 in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La. Civ.Code art.2047; Ledbetter v. Concord Gen. Corp., 665 So.2d at 1169 citing Louisiana Ins. Guar. v. Interstate Fire, 630 So.2d at 763; Reynolds v. Select Properties, Ltd., 634 So.2d at 1183. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Ledbetter v. Concord Gen. Corp., 665 So.2d at 1169 citing Pareti v. Sentry Indem. Co., 536 So.2d 417, 420 (La.1988); Reynolds v. Select Properties, Ltd., 634 So.2d at 1183. Courts lack the authority to change or alter the terms of an insurance policy under the guise of interpretation. Louisiana Ins. Guar. v. Interstate Fire, 630 So.2d at 764.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., 634 So.2d at 1183; Louisiana Ins. Guar. v. Interstate Fire, 630 So.2d at 763. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. As this court has stated in Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939), Commercial Union Ins. Co. v. Advance Coating Co., 351 So.2d 1183, 1185 (La.1977), and Reynolds v. Select Properties, Ltd., 634 So.2d at 1183:
The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties....

DISCUSSION
Guided by the language of the pollution exclusion clause and the basic principles as set forth in the Louisiana Civil Code, we conclude that coverage for damage resulting from the release of anhydrous ammonia is excluded under the commercial general liability policy.[1] Our decision regarding the reasonable scope of a pollution exclusion, in the absence of ambiguity, must be tied to the language of the policy. The clear terms of the pollution exclusion at issue explicitly preclude coverage of liability arising from "the discharge, dispersal, seepage, migration, release and escape" of "pollutants," defined as "any ... gaseous ... irritant or contaminant, including ... vapor, ... fumes, ... [and] chemicals." As a court, we cannot place limitations upon the plain language of a policy exclusion simply because we may think it should have been written that way. Neither can we construe insurance policies based upon a determination as to whether the insured's subjective expectations are reasonable, as such guesswork can only lead to uncertainty and unnecessary litigation. Applying the policies' language to the context of the claim does not produce an uncertain or ambiguous result, but leads to one reasonable conclusion: the alleged damage was caused by the release of anhydrous ammonia, a substance which is clearly a "pollutant" for which coverage is precluded under the policies' language.
We find that the court of appeal erred in concluding that the pollution exclusion clause in this case "excludes coverage only for `active industrial polluters, when businesses knowingly emit[ted] pollutants over extended periods of time.'" Thompson *437 v. Temple, 580 So.2d 1133, 1134 (La.App. 4 Cir.1991). This interpretation finds no support in the policy language. Nowhere does the pollution exclusion clause state that it excludes coverage only for active industrial polluters or businesses which knowingly emit pollutants over extended periods of time. Rather, the plain language of the insurance contract precludes coverage for bodily injury or property damage arising from a polluting discharge. This means that it applies regardless of whether the release was intentional or accidental, a one-time event or part of an on-going pattern of pollution.
We see no reason to address what might be the holding under certain hypothetical situations if we interpret the pollution exclusion clause as it is written because none of those facts are before us. Suffice it to say that insurance policies will not be construed to reach absurd results. Applying the unambiguous language of the pollution exclusion clause to the facts of this case, it is clear that the incident at issue is excluded from coverage under the insurance policy. See, Deni Associates v. State Farm Ins., 89,115, 89,300 (Fla.1/29/98); 711 So.2d 1135.
Individuals and businesses expect that courts will enforce the plain language of contracts and conduct their affairs based upon such expectations. Judicial fidelity to the basic principles of contract interpretation is therefore vital to retain the confidence of both the public at large and the business community. Insurers underwrite contracts only for specific risks and, thus, provide explicit exclusions therein to clarify the scope of coverage provided. Without adherence to policy language, parties could elect not to purchase pollution coverage and thereby pass the cost onto their insurers, which would affect all other policy holders via an increase in premiums. The consequences of failing to give effect to the language of the contract may have potentially far-reaching results which are contrary to Louisiana's policy of individual responsibility. See, La.Rev.Stat. Ann. § 30:2271(B) (West 1998).

CONCLUSION
When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. Brown v. Drillers, Inc., 93-1019 (La.1/14/94); 630 So.2d 741.[2] Because this court finds the pollution exclusion facially unambiguous, the decision of the trial court and the Third Circuit Court of Appeal is reversed and summary judgment is granted in favor of Commercial Union Insurance Company and First Financial Indemnity Company.
REVERSED.
CALOGERO, C.J., and KIMBALL, J., dissent and assign reasons.
JOHNSON, J., dissents.
CALOGERO, Chief Justice, dissenting.
I find no reason to stray from this Court's previous reasoning in South Central Bell Telephone Co. v. Ka-Jon Food Stores of Louisiana, Inc., 644 So.2d 357, vacated and remanded, 644 So.2d 368 (La.1994) (vacated and remanded for evidentiary hearings on whether the pollution exclusion clause at issue was actually a policy endorsement). Although Ka-Jon lacks precedential value, its reasoning remains persuasive. Interpreting a similar pollution exclusion clause to a general liability policy, Ka-Jon reasoned that the insured and insurer never intended a literal and limitless interpretation of the pollution exclusion clause, as such an interpretation would eviscerate the primary purpose of a general liability policy"protecting against fortuitous accidents and incidental business risks." Id. at 364. Thus, the clause was ambiguous, and led to absurd consequences. Id.
Ka-Jon then reasoned that an absolute pollution exclusion clause "is not applicable to fortuitous occurrences which involve only incidental pollution, i.e., accidents where pollution is inconsequential to the damages sustained." Id. at 365. However, the pollution exclusion clause does apply "to all damages resulting from intentional pollution or environmentally *438 hostile conduct." Id. If a fortuitous event results in "partial to comprehensive environmental damage," then only those environmental pollution damages are excluded. Id.
In the instant case, plaintiffs personal injury damages arose from a fortuitous grass cutting accident. Applying the reasoning of Ka-Jon, plaintiffs are not precluded from recovering these damages. Accordingly, I respectfully dissent.
KIMBALL, Justice, dissenting.
I disagree with the majority's characterization of the pollution exclusion at issue as unambiguous and with its holding that construes the exclusion so as to preclude coverage in this case. The majority's resolution of the issue presented is, in my view, shortsighted, for its blind application of the language of the pollution exclusion undoubtedly leads to absurd results.
As a contract, an insurance policy is construed by using the general rules of interpretation of contracts. Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736. A contract is interpreted by determining the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046. Conversely, when the words of a contract are ambiguous or lead to absurd consequences, a court attempting to interpret the contract must try to ascertain the common intent of the parties in other ways. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usage and the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art.2053.
Insurance policies should be interpreted to effect, not deny, coverage. Yount v. Maisano, 627 So.2d 148 (La.1993). Any ambiguity in an insurance policy's exclusion should be narrowly construed to afford coverage. Yount, 627 So.2d at 151. That is, ambiguous exclusionary clauses must be interpreted in the insured's favor. Borden, Inc. v. Howard Trucking, Co., Inc. 454 So.2d 1081 (La.1983). It is the insurer who bears the burden of proving that a loss falls within a policy exclusion. Louisiana Maintenance Serv., Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250 (La.1993).
The pollution exclusion at issue in this appeal states:
This insurance does not apply to:
(1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
(2) Any loss, cost or expense arising out of any:
(a) Request, demand or order that any insured or others test for, monitor, clear up, remove, contain treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
(b) Claim of suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clearing up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.
Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.
Plaintiffs argue this exclusion, when considered in light of the terms of art used and the purpose of the comprehensive general liability policy at issue, applies only to traditional environmental pollution or "active industrial polluters." On the other hand, defendants argue and the majority finds that this exclusion applies literally to any discharge of a solid, liquid, gaseous or thermal irritant or contaminant which causes bodily injury or property damage. Both of these readings are reasonable; the former in light of the language of the exclusion as a whole and the latter in light of the language of part (1) of the exclusion when read in isolation. Therefore, the pollution exclusion is ambiguous. See also Kent Farms, Inc. v. Zurich Ins. Co., *439 969 P.2d 109 (Wash.1998), 1998 WL 904244; Danbury Ins. Co. v. Novella, (Conn.Super.1998), 1998 WL 830935; Weaver v. Royal Ins. Co., 140 N.H. 780, 674 A.2d 975 (N.H. 1996). But see Bituminous Cas. Corp. v. RPS Co., 915 F.Supp. 882 (W.D.Ky.1996); American States Ins. Co. v. F.H.S., Inc., 843 F.Supp. 187 (S.D.Miss.1994); Deni Assoc. of Florida v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135 (Fla.1998).[1] As an ambiguous exclusion, it should be construed consistent with plaintiffs' arguments so as to provide coverage in this case.
More importantly, the purely literal reading espoused by the majority leads to absurd consequences. That the language is overbroad is obvious when the exclusion is applied to cases which have nothing to do with the traditional meaning of "pollution." When viewed in isolation, the terms "irritant" and "contamination," used to define excluded "pollutants," are limitless because "there is virtually no substance or chemical in existence that would not irritate or damage some person or property." Westchester Fire Ins. Co. v. City of Pittsburg, Kan., 768 F.Supp. 1463, 1470 (D.Kan.1991). As aptly stated by the court in Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037 (7th Cir.1992):
Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.
Pipefitters, 976 F.2d at 1043.
Recognizing the absurd consequences flowing from a purely literal application of the exclusion without regard to the circumstances of the accident giving rise to a claim, the court in Western Alliance Ins. Co. v. Gill, 426 Mass. 115, 686 N.E.2d 997 (Mass.1997), catalogued several cases holding that the pollution exclusion cannot be blindly applied to situations which do not resemble "traditional environmental contamination." The court stated:
[C]ourts have held that the exclusion, and similar limiting provisions, did not bar coverage for: injuries caused by the ingestion of lead paint, Atlantic Mut. Ins. Co. v. McFadden, [413 Mass. 90, 595 N.E.2d 762 (Mass.1992)]; the death of a man who inhaled poisonous fumes when he applied adhesive to install a carpet on his boat, Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc., 73 F.3d 335, 337-338 (11th Cir.1996); injuries caused by exposure to fumes from toxic cements and solvents and congestive dusts created by rubber fabricating processes, Lumbermens Mut. Cas. Co. v. S-W Indus., Inc., 23 F.3d 970, 982 (6th Cir.1994); property damage caused by fumes released from muriatic acid used to etch a floor surface, Sargent Constr. Co. v. State Auto. Ins. Co., 23 F.3d 1324, 1327 (8th Cir.1994); injuries caused by the inhalation of chemical fumes from a carpet, Garfield Slope Hous. Corp. v. Public Serv. Mut. Ins. Co., 973 F.Supp. 326, 332-333 (E.D.N.Y.1997); injuries resulting when fumes emanated from cement used to install a plywood floor, Calvert Ins. Co. v. S & L Realty Corp., 926 F.Supp. 44, 46-47 (S.D.N.Y.1996); injuries sustained from exposure to photographic chemical, Center for Creative Studies v. Aetna Life & Cas. Co., 871 F.Supp. 941, 946 (E.D.Mich.1994); injuries to individuals who ingested malathion during a municipal pesticide spraying operation, Westchester Fire Ins. Co. v. Pittsburg, Kan., 768 F.Supp. 1463, 1468-1471 (D.Kan.1991), aff'd. Sub nom. Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Pittsburg, Kan., 987 F.2d 1516 (10th Cir. 1993); injuries incurred by a United States Department of Agriculture inspector when a gasket failed in a refrigeration system *440 causing an ammonia leak, Ekleberry, Inc. v. Motorists Mut. Ins. Co., No. 3-91-39, 1992 WL 168835 (Ohio Ct.App. July 17, 1992); paint damage to vehicles which occurred during the spray painting of a bridge, A-1 Sandblasting & Steamcleaning Co. V. Baiden, 53 Or.App. 890, 892, 893, 632 P.2d 1377 (1981), aff'd, 293 Or. 17, 643 F.2d[P.2d] 1260 (1982); and, with particular relevance to this case, injuries suffered by persons exposed to an excessive accumulation of inadequately ventilated exhaled carbon dioxide in an office building, Donaldson v. Urban Land Interests, Inc., 211 Wis.2d 224, 225-227, 564 N.W.2d 728 (1997), and carbon monoxide released by faulty heating and ventilation systems, Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47 F.3d 34, 37-38 (2d Cir.1995); Regional Band[Bank] v. St. Paul Fire and Marine Ins. Co., 35 F.3d 494, 497-498 (10th Cir.1994); Thompson v. Temple, 580 So.2d 1133, 1135 (La.Ct.App. 1991); American States Ins. Co. v. Koloms, [, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72 (Ill.1997)].
Western Alliance, 686 N.E.2d at 999. After this exhaustive synthesis, the court noted,
The common thread between these decisions is that "[a]ll involve injuries resulting from everyday activities gone slightly, but not surprisingly, awry," Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1044 (7th Cir.1992), and in each, the insurer urged a broad reading of the pollution exclusion clause to cover the accident at issue. However, an objectively reasonable insured, reading the language of the typical pollution exclusion, would not expect a disclaimer of coverage for these types of mishaps even though they involve "discharges," "dispersals," "releases," and "escapes" of "contaminants" and "irritants."
Id. at 1000.
As one would not expect a slip and fall on Drano to be excluded under the "pollution exclusion" in his general liability policy, neither would he expect injuries allegedly resulting from a grass cutting accident to be excluded from coverage under this clause. Surely, when the insureds in this case purchased their comprehensive general liability policy, they expected that injuries resulting from accidents stemming from the grass cutting operations, i.e., claims arising during the course of normal business activities, would be covered under their comprehensive general liability policy. Thus, the insured can be said to have intended that the pollution exclusion clause apply only to traditional environmental pollution.
Similarly, the history of the pollution exclusion provision supports the conclusion that the insurance industry itself originally intended the exclusion to apply only to environmental pollution. The events that led the insurance industry to utilize the pollution exclusion are "well-documented and relatively uncontroverted." Morton Int'l, Inc. v. General Accident Ins. Co., 134 N.J. 1, 629 A.2d 831, 848 (N.J.1993). The standard pollution exclusion was added in 1970 in the wake of Congress' amendment to the Clean Air Act which was an effort to protect and enhance the quality of the nation's air resources and the environmental disasters of Times Beach, Love Canal and Torrey Canyon. American States Ins. Co. v. Koloms, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 80 (Ill.1997). The endorsement provided in pertinent part:
This policy shall not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse of body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.
Koloms, 227 Ill.Dec. 149, 687 N.E.2d at 80. In response to the "enormous expense and exposure resulting from the `explosion' of environmental litigation," the insurance industry re-wrote the exclusion in 1985 to eliminate the "sudden and accidental" exception and to omit language requiring the discharge to be into the air, water or land, resulting in today's so-called "absolute pollution exclusion." Weaver v. Royal Ins. Co. of America, 140 N.H. 780, 674 A.2d 975, 977 (N.H.1996) *441 (quoting Vantage Dev. v. American Env. Tech., 251 N.J.Super. 516, 598 A.2d 948, 953 (N.J.1991)). The purpose of the current exclusion, like its predecessor, is "to exclude governmental clean up costs from the scope of coverage." Koloms, 227 Ill.Dec. 149, 687 N.E.2d at 81. See also Sullins v. Allstate Ins. Co., 340 Md. 503, 667 A.2d 617, 623 (Md.1995) ("It appears from the foregoing discussion that the insurance industry intended the pollution exclusion to apply only to environmental pollution.").
This history reviewed above demonstrates that the prevailing motivation in the drafting of the pollution exclusion was the avoidance of the expense of the ever-increasing environmental litigation that the insurance industry was being forced to bear. Thus, the industry's intention was to exclude only traditional environmental pollution damage from coverage. This intent is further evidenced by the policy's use of the words "discharge," "dispersal," "release," "escape," "contaminant," and "pollutant" since these words are terms of art in environmental law. Sullins, 667 A.2d at 622. As stated in Koloms, 227 Ill.Dec. 149, 687 N.E.2d at 81, "We would be remiss, therefore, if we were to simply look to the bare words of the exclusion, ignore its raison d'etre, and apply it to situations which do not remotely resemble traditional environmental contamination." Accordingly, the majority has erred by simply applying the plain words of the exclusion to the incident at issue without noting the absurd consequence which follow from such an application and the intent of both parties that the exclusion only apply to environmental pollution.
Finally, the majority fails to address First Financial Insurance Company's third assignment of error, that the lower court erred in failing to consider the applicability of section (2) of the exclusion relating to clean-up costs. In so doing, the majority fails to address the obvious intent that the exclusion only apply to traditional environmental hazards. When the exclusion is read in its entirety, including part (2) which deals with clean-up costs and suits by or on behalf of a governmental authority, it is clear the exclusion was not intended to apply to situations such as the one at issue.
For all the reasons discussed above, the pollution exclusion, if applied literally, is ambiguous and leads to absurd results. The clear intention of both parties to the contract is that the exclusion only apply to traditional industrial polluters. Consequently, the majority is incorrect in its blind application of the language and its determination that the exclusion applies to prevent coverage in this case.

ON REHEARING
PER CURIAM.[*]
Koch Pipeline, L.P. filed an application for rehearing, requesting modification of the opinion in this matter rendered on January 20, 1999. We grant rehearing on the following issues, modify the opinion as discussed below, and deny all other contentions raised on rehearing.
In its first assignment of error, Koch Pipeline, L.P. points out that Commercial Union Insurance Company moved for a dismissal of their appeal to the third circuit as it related to the pollution exclusion and Delancy's entitlement to a defense. Because this motion was granted by the third circuit, Commercial Union Insurance Company was not before this court and summary judgment is proper only as to first financial.
Second, Koch Pipeline, L.P. contends that the court, by granting summary judgment in favor of First Financial, dismissed all claims alleged by Koch Pipeline, L.P. It remains this court's contention to rule simply on the applicability of the pollution exclusion. As noted in our earlier decision, damage resulting from the release of anhydrous ammonia is excluded under the commercial general liability policy. The court recognizes that its holding does not dispose of all issues, and therefore remands the case to the Twelfth Judicial district Court for further proceedings consistent with the views expressed in the court's opinion.
Finally, Koch Pipeline, L.P. asserts that the court's interpretation of the pollution exclusion *442 clause does not consider the common intention of the parties or the nature of the contract. As this assignment of error deals directly with the merits of the case, it is denied.
The judgment of the court dated January 20, 1999 is amended to recognize the above modifications. In all other respects, the rehearing is denied.
NOTES
[*] Lemmon, J., not on panel. See Rule IV, Part 2, § 3.
[1] This court's holding in South Cent. Bell Tel. Co. v. Ka-Jon Food Stores of Louisiana, Inc., 93-2926 (La.5/24/94); 644 So.2d 357, was vacated by the later decision of South Cent. Bell Tel. Co. v. Ka-Jon Food Stores of Louisiana, Inc., 93-2926 (La.9/15/94); 644 So.2d 368, and therefore lacks any precedential value. However, other jurisdictions have held that the pollution exclusion is applicable to ammonia leaks and spills which injure persons exposed to ammonia fumes. Deni Assoc. v. State Farm Ins., 711 So.2d 1135 (Fla. 1998); Bituminous Cas. Corp. v. RPS Co., 915 F.Supp. 882 (W.D.Ky.1996); American States Ins. Co. v. F.H.S., Inc., 843 F.Supp. 187 (S.D.Miss.1994).
[2] Under La.Code Civ. Proc. art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue as to material fact and mover is entitled to judgment as a matter of law. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95); 653 So.2d 1152.
[1] Indeed, the very existence of conflicting judicial interpretations of almost identical exclusions is evidence of ambiguity as the exclusion is obviously susceptible to more than one reasonable interpretation.
[*] Lemmon, J., not on panel. See Rule IV, Part 2, § 3.