771 So.2d 300 (2000)
Robert TIPPETT and Luegene Corbin, et al., Plaintiffs/Appellants,
v.
PADRE REFINING COMPANY and The Lexington Insurance Company, Defendants/Appellees.
Ella K. English, et al., Plaintiffs/Appellants,
v.
Padre Refining Company, et al., Defendants/Appellees.
Nos. 34,140-CA, 34,141-CA.
Court of Appeal of Louisiana, Second Circuit.
November 15, 2000.
*301 Sharp, Henry, Cerniglia, Colvin & Weaver by James H. Colvin, Homer, Counsel for Appellants.
*302 The Juneau Firm by Thomas R. Juneau, Karen Bordelon Levy, Lafayette, Walter F. Clawson, Shreveport, Counsel for Appellees.
Before NORRIS, C.J., and BROWN and CARAWAY, JJ.
NORRIS, Chief Judge.
Plaintiffs, alleging personal injury and property damage as the result of an oil spill by an oil refinery operated by Padre Refining Company, appeal the grant of summary judgment to Padre's insurer on the basis of a "pollution exclusion" to its general liability policy. Finding the exclusion valid, we affirm.

Factual Background
On January 10, 1997 approximately 3,000 barrels of crude oil were accidently released into the environment surrounding an oil refinery located in Claiborne Parish. At the time of the spill, the refinery was being operated by Padre Refining Company pursuant to an operating agreement with the owner. The refinery had only been in operation for a day after being out of service for approximately one year due to the owner's bankruptcy. A subsequent investigation revealed that one of Padre's employees had misaligned a set of valves between two of the refinery's storage tanks; as a result, some of the oil went into the wrong tank, causing it to overflow into a nearby firewall. Because another valve was left open in the firewall, the oil eventually passed out of the facility and into a nearby creek. The oil contained hexene, benzene, and other carcinogens; certain nearby residents inhaled these pollutants and suffered nausea and severe headaches.
Shortly before the spill, on December 10, 1996, Lexington Insurance Company, through its local agent, issued a Commercial General Liability Policy to an entity known as "Padre Trading Company." After the spill, a claim was made under the policy, but was denied on the basis of the policy's "absolute" pollution exclusion. In response, Padre Refining brought a declaratory action against Lexington, seeking a judicial determination on the issue of coverage. Robert Tippet and Luegene Corbin, local residents who suffered property damage and/or personal injury, as well as the fear of contracting cancer as a result of the spill intervened seeking damages; they also joined Padre's request for a declaratory judgment on the coverage issue. After the trial court sustained Padre's exception of no cause of action with respect to damages, Tippet and Corbin filed a separate suit (34,140) against Padre and its insurer, Lexington. This suit was eventually consolidated with another suit (34,141) brought against Padre and Lexington by a third group of 62 plaintiffs who also claimed property and personal damages.
In the consolidated plaintiffs' suit and also in the declaratory action, Lexington filed a Motion for Summary Judgment based on its policy exclusion. Relying on the then-recent case of Ducote v. Koch Pipeline Co., L.P., 98-0942 (La.1/20/99), 730 So.2d 432, the trial court granted summary judgment in favor of Lexington. The plaintiffs brought the instant appeal; neither Padre Trading nor Padre Refining has appealed.

Applicable Law
A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Barnett v. Staats, 25,357 (La.App.2d Cir.1/19/94), 631 So.2d 84. Summary judgment procedure is favored to secure the just, speedy, and inexpensive determinations of all except certain disallowed actions. La. C.C.P. art. 966 A(2). Appellate review of summary judgments is de novo, utilizing the same criteria that guide the *303 trial court. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152; Steed v. St. Paul's United Methodist Church, 31,521 (La.App.2d Cir.2/24/99), 728 So.2d 931, writ denied, 99-0877 (La.5/7/99), 740 So.2d 1290.
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Ducote, supra at 435; Louisiana Ins. Guar. Assn. v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94), 630 So.2d 759. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. Id.; La. C.C. art. 2045. Such intent is determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy. Id.; Adams v. Falcon Equip. Corp., 30,754 (La.App.2d Cir.8/21/98), 717 So.2d 282, 289, writ denied, 98-2472 (La.11/18/98), 729 So.2d 1. Particularly, an insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183; Adams, supra; Lindsey v. Poole, 579 So.2d 1145, 1147 (La.App. 2d Cir.), writ denied, 588 So.2d 100 (La.1991); Jefferson v. Monumental General Ins. Co., 577 So.2d 1184, 1187 (La.App. 2d Cir.1991); Harvey v. Mr. Lynn's, Inc., 416 So.2d 960, 962 (La.App. 2d Cir.1982). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made into the parties' intent and the agreement must be enforced as written. La. C.C. art. 2046; Ducote, supra; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 197.
Subject to these rules of interpretation and absent a conflict with statutory provisions or public policy, insurers are entitled to limit coverage and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Ducote, supra at 436; Commercial Union Ins. Co. v. Advance Coating Co., 351 So.2d 1183, 1185 (La.1977). Any provision which seeks to narrow an insurer's obligation should be strictly construed against the insurer; this does not, however, empower a court to exercise its power of review to strain otherwise clear language or depart from the accepted meaning of words in order to create an ambiguity where none in fact exists. Ducote, supra at 436; Reynolds, supra at 1183.

Discussion
In seeking summary judgment as a matter of law, Lexington relies on a policy exclusion which read:
II. EXCLUSIONS
This insurance does not apply:
* * *
G. to bodily injury or property damage (including the loss of use thereof) caused by, contributed to or arising out of the actual or threatened discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course or body of water, whether above or below ground. It is understood and agreed that the intent and effect of this exclusion is to delete from any and all coverages afforded by this policy any claim, action, judgment, liability, settlement, defense or expenses (including any loss, cost, or expense arising out of any governmental direction or request that the Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants) in any way arising out of such actual or threatened discharge, dispersal, release or escape, whether such results from the Insured's activities or the activities of others, and whether or not *304 such is sudden or gradual, and whether or not such is accidental, intended, foreseeable, expected, fortuitous or inevitable, and wherever such occurs;
Further, endorsement 002 of the policy was an explicit "pollution exclusion" which read, inter alia:
POLLUTANT EXCLUSION
This policy is amended in that it shall not apply to any claim or claims for Personal Injuries or Personal Damage relating to the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants.
The word "Pollutants", wherever used in this Exclusion, means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
Notably, the language used in these exclusions is virtually identical to the language the Supreme Court ruled was clear and unambiguous in Ducote. Admitting as much in brief, the plaintiffs nevertheless contend that the district court erred by failing to find that Lexington breached its obligation to inform Padre Trading of the availability and advisability of obtaining pollution coverage endorsements. Relying solely on South Central Bell Telephone Co. v. Ka-Jon Food Stores of Louisiana, Inc., 93-2926 (La.5/24/94), 644 So.2d 357, plaintiffs contend that in light of the exclusion's broad implications, Lexington should have advised them of the need for additional coverage to offset the exclusion. Other than Ka-Jon, however, we are unaware of, and the parties failed to cite any other Louisiana jurisprudence which creates such a duty on behalf of an insurer.
Initially, we note that the Supreme Court subsequently vacated Ka-Jon, so it has no precedential value. South Central Bell Telephone Co. v. Ka-Jon Food Stores of Louisiana, Inc., 93-2926 (La.9/15/94), 644 So.2d 368; Ducote, supra. Even assuming that the opinion's reasoning on this point was valid (for the opinion was vacated on other grounds), Ka-Jon is clearly distinguishable from the present case. In Ka-Jon, a gas station/convenience store operator had a continuing relationship with an insurer, who upon a policy renewal, changed the text of its pollution exclusion to eliminate coverage for all pollution related damages. Ka-Jon, supra at 366. This substantial change in coverage, however, did not result in a change in premium, thus leading the court to the conclusion that Ka-Jon could have reasonably believed that it was receiving substantially the same protection against fortuitous losses which it had previously enjoyed, and that public policy dictated that under these circumstances, the insurer had an obligation to forewarn its insured of the necessity of obtaining additional coverage in light of the expanded exclusion, particularly since its business involved the sale of gasolinea potential pollutant. Id.
In the present case, the policy in question was an initial policy between Lexington and Padre Trading, and not a renewal policy such as in Ka-Jon, where an insured arguably has a reasonable expectation of uninterrupted and unmodified coverage without prior notice. In addition, we note that Padre was in the business of refining oil (which is a pollutant under federal law, see, e.g., 33 U.S.C. § 1321 (a)(1);(2)), and the need for pollution coverage should have been self-evident. Moreover, the record is devoid of any credible evidence, such as affidavits or deposition testimony, that Padre Trading (which is not a party to this appeal) was not so informed. Accordingly, this assignment has no merit.
Alternatively, plaintiffs contend that the pollution exclusion was intended only to apply to active industrial polluters and traditional environmental pollution, and not to accidental or fortuitous spills, even though the Ducote court rejected this very argument. In fact, plaintiffs urge *305 that we not follow that decision, suggesting that the Ducote decision was imprudent because the Supreme Court, in their opinion, failed to impart a reasonable historical construction of the pollution exclusion to its decision. Unless we conclude that the policy language is ambiguous, however, it is inappropriate for us to consider the arguments pertaining to the history of the pollution exclusion clause. La. C.C. art. 2046. As noted previously, the language in the instant exclusion is virtually identical to that which the Supreme Court has already found clear and unambiguous in Ducote, supra. As such, plaintiffs are in reality urging that we resurrect the very jurisprudence the Supreme Court repudiated in Ducote and overturn that decision which we are not empowered to do. This assignment lacks merit.
Similarly, following the dissent in Ducote and the vacated Ka-Jon opinion, plaintiffs alternatively contend that the pollution exclusion in the present case is so broad in its failure to distinguish between active industrial polluters and those who pollute through negligent or fortuitous acts that it is in fact ambiguous and therefore should be strictly construed against the insurer. This argument likewise lacks merit, for the very same reasons the Ducote court rejected an identical argument.
In Ka-Jon, South Central Bell sought recovery from a convenience store/gas station operator and its insurer after gasoline that accidentally leaked from the store's underground storage tanks damaged Bell's underground telephone cables. The insurer denied coverage, relying on a pollution exclusion that did not explicitly state whether it applied to intentional or negligent polluting, or both. The court felt this omission created an ambiguity in the policy, and construed the ambiguity against the insurer because it was the party that furnished the text. Ka-Jon, supra at 365. Notably, although on this basis the court rejected this exclusion as "overly broad and abstract," it did not rule that such a broad exclusion, if unambiguous, could never be valid.
In Ducote, supra, the Supreme Court was faced with a similarly broad, but unambiguous exclusion. In that case, plaintiffs filed suit alleging that they suffered personal injuries as a result of exposure to anhydrous ammonia which was released when a tractor overturned and ruptured an ammonia pipeline. The exclusion precluded coverage with respect to "bodily injury or property damage which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." Ducote, supra at 435. Relying on the exclusion's languagewhich it felt was clear and unambiguousthe court rejected the contention that the exclusion was only applicable to active industrial polluters or businesses which knowingly pollute over extended periods of time:
Nowhere does the pollution exclusion clause state that it excludes coverage only for active industrial polluters or businesses which knowingly emit pollutants over extended periods of time. Rather, the plain language of the insurance contract precludes coverage for bodily injury or property damage arising from a polluting discharge. This means that it applies regardless of whether the release was intentional or accidental, a one-time event or part of an on-going pattern of pollution.
Id. at 437.
As in Ducote, the exclusion in the instant case is not ambiguous; since nothing in the language of the exclusion limits its applicability, Ka-Jon simply is not applicable. See also, Matheny v. Ludwig, 32,288 (La.App.2d Cir.9/22/99), 742 So.2d 1029, 1033; Arcuri v. Chevron U.S.A., 1999 WL 212713 (E.D.La. April 8, 1999), aff'd, 216 F.3d 1080 (5th Cir.2000).
In their reply brief, plaintiffs advance another alternative argument that the policy in the instant case is distinguishable *306 from that in Ducote because Endorsement Number 002 to the policy, provided that:
This exclusion shall not apply to any such discharge, dispersal, release or escape that results from:
1. Violent breaking open of any plant, pipeline, equipment or building for which the Named Insured has legal responsibility...
As such, plaintiffs contend, summary judgment was improper as a genuine issue of material facts exists as to whether the oil indeed broke out "violently." From this record, however, there is nothing to suggest that the oil escaped by "breaking out" violently or otherwise. In fact, the plaintiffs presented no summary judgment evidence suggesting that any part of the refinery's plant, pipeline, equipment, or building broke open or exploded "violently" as required by the endorsement. In the summary judgment context, a non-moving party must produce some evidence other than unsupported denials in the pleadings or argument of counsel in order to defeat a motion for summary judgment which is supported with evidence. Louisiana Health Services & Indem. Co. v. Brown Builders, Inc., 32,575 (La.App.2d Cir.12/8/99), 747 So.2d 708 ("opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence that material facts are still at issue"). Contrary to plaintiffs' assertions, the summary judgment evidence shows only that the oil spill simply was caused by an overflow from one of the tanks. This argument, therefore, lacks merit.
At oral argument, plaintiffs suggested, for the first time, at the time the policy was issued, the existing legal precedents, such as Ka-Jon, would have led to the subjective conclusion that there was coverage for claims such as in this case, since the Ducote decision postdates the issuance of the policy. As such, it would be unfair to hold the parties to a construction of the pollution exclusion which did not exist when the contract was written. This argument was likewise rejected by the Ducote court (where the policy in question obviously predated the Supreme Court's ruling), which refused to inquire into the parties' subjective expectations in the face of a clear and unambiguous exclusion, noting:
[a]s a court, we cannot place limitations upon the plain language of a policy exclusion simply because we may think it should have been written that way. Neither can we construe insurance policies based upon a determination as to whether the insured's subjective expectations are reasonable, as such guesswork can only lead to uncertainty and unnecessary litigation.
Ducote, supra at 432; see also, Matheny v. Ludwig, 32,288 (La.App.2d Cir.9/22/99), 742 So.2d 1029, 1033.

Conclusion
For the reasons expressed above, we find the pollution exclusion clear, unambiguous, and enforceable in the present case. Lexington was therefore entitled to rely on this clause and likewise entitled to summary judgment as a matter of law. In light of this conclusion, we pretermit any discussion of the appellant's remaining assignment of error, that the district court erred in its finding that Padre Refining was not a named insured. The judgment of the district court is AFFIRMED. Costs of appeal are assessed to the appellants.
AFFIRMED.
BROWN, J., dissents with reasons.
BROWN, J., Dissenting.
Padre's sole business is refining oil. A literal and limitless reading of the pollution exclusion eviscerates the primary purpose of the general liability policy to protect against fortuitous accidents and incidental business risks. The absolute exclusion relating *307 to Padre's only product leads to absurd consequences.