730 So.2d 952 (1998)
Sharon HOLLAWAY, et al.
v.
GAYLORD CHEMICAL CORP., Gaylord Container Corp. and ABC Insurance Company.
No. 98 CA 0828.
Court of Appeal of Louisiana, First Circuit.
December 28, 1998.
As Corrected March 12, 1999.
*953 Stephen B. Murray, New Orleans, Ronnie G. Penton, Bogalusa, Gerald E. Meunier, New Orleans, James S. Farmer, Bogalusa, Reginald J. Laurent, Slidell, for Plaintiffs-Appellees The Plaintiffs Liaison Committee.
Richard F. Knight, E.B. Dittmer, II, Charles M. Hughes, Jr., Paul S. Hughes, Bogalusa, Thomas O. Kuhns, Daniel K. Frey, Chicago, IL, for DefendantAppellant Gaylord Chemical Corp.
Robert E. Barkley, Jr., Thomas Schwab, Nicholas D. Doucet, New Orleans, William V. Johnson, Frank P. Nowicki, Chicago, IL, for DefendantAppellant Union Tank Car Co.
*954 Lawrence E. Abbott, Sarah E. Iiams, Monique M. Weiner, New Orleans, for Defendant Appellant Illinois Central Railroad Co.
F. Frank Fontenot, James K. Irvin, Timothy T. Roniger, New Orleans, for Defendant Appellant The Kansas City Southern Railway Co.
Leonard L. Kilgore, III, Sandra L. Edwards, Esteban Herrera, Jr., Melissa M. Cresson, Baton Rouge, John E. Wade, T. Michael Cronin, Jackson, MS, for Defendant Appellant Vicksburg Chemical Co.
Leonard L. Kilgore, III, Sandra L. Edwards, Esteban Herrera, Jr., Melissa M. Cresson, Baton Rouge, Allen T. Malone, Memphis, TN, for DefendantAppellant Cedar Chemical Corp.
Charles E. Sutton, Jr., Metairie, for Defendant Appellant Gaylord Container Corp.
Celeste Darmstadter Elliott, Ralph S. Hubbard, III, New Orleans, for Defendant Appellant Travelers Casualty and Surety Co.
Glenn G. Goodier, New Orleans, for Defendants Appellants Transportation Ins. Co. and CNA Ins. Companies.
Gary M. Zwain, Kelly Cambre Bogart, Metairie, for DefendantAppellant Federal Ins. Co.
Michael G. Durand, Lafayette, for Defendant Appellant Royal Indemnity Co.
Stephan Michael Cooper, George B. Hall, Jr., Jay Russell Sever, New Orleans, for DefendantAppellant Agricultural Ins. Co.
W. Arthur Abercrombie, Jr., William Shelby McKenzie, Baton Rouge, for Defendants Appellants Agricultural Ins. Co., Federal Ins. Co., Travelers Casualty & Surety Co., and Royal Indemnity Co.
Before: LeBLANC, FOGG, and PARRO, JJ.
FOGG, J.
By this appeal, defendants in this class action challenge the trial court's determination of the geographical and temporal boundaries of the class and the trial court's refusal to certify a mandatory no-opt-out class for punitive damages.

FACTS AND PROCEDURAL HISTORY
Plaintiffs brought this action on behalf of persons and entities allegedly injured as a result of the explosion of a railroad tank car on October 23, 1995 in Bogalusa, Louisiana. The tank car was owned by Union Tank Car Company and leased to Gaylord Chemical Corporation, on whose premises the explosion occurred. The tank car contained a shipment of nitrogen tetroxide manufactured by Vicksburg Chemical Company and loaded aboard the tank car in Vicksburg, Mississippi. The Kansas City Southern Railway Company moved the car from Vicksburg to Jackson, Mississippi, where it was turned over to the Illinois Central Railroad, which moved it to Gaylord's plant in Bogalusa, Louisiana, approximately two weeks before the explosion. The companies named above, among others, were named as defendants.
The trial court initially certified a class on July 15, 1996. A group of plaintiffs challenged that certification in an application for supervisory review filed in this court. On March 27, 1997, this court reversed the trial court's certification order and remanded the case for an evidentiary hearing on the qualifications of class counsel, adequacy of class representatives, and the establishment of the geographic boundaries of the class. Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049 (La.App. 1 Cir. 3/27/97); 691 So.2d 760, writs denied, 97-0800, 97-0830 (La.4/8/97); 693 So.2d 147.
On November 10, 1997, the trial court entered judgment that certified a class, the geographical boundaries of which extended north of Bogalusa into three Mississippi counties: Walthall, Marion, and Pike. The trial court designated the entire month of October 1995 as the temporal boundary of the class. The trial court also declined to certify a mandatory no-opt-out class for punitive damages. Additionally, the trial court approved certain attorneys as members of the Plaintiffs' Liaison Committee ("PLC") and approved certain plaintiffs as class representatives.
Defendants moved for a suspensive appeal from that judgment. Defendants also filed a writ application from the class certification *955 judgment, seeking discretionary review of the judgment in the event the appeal was denied. The trial court denied defendants' motion for suspensive appeal; defendants sought review of that judgment by another writ application filed with this court. On March 20, 1998, this court denied the earlier writ application seeking review of the class certification, finding that review was appropriate by appeal:
[Defendants] have met their burden of proving irreparable injury resulting from the class certification, thereby entitling them to a suspensive appeal of the interlocutory judgment under La.Code Civ. P. Art.2083(A). See Carr v. GAF, Inc., et al., 97-2325 (La.11/14/97); 702 So.2d 1384. [Defendants] should be allowed to suspensively appeal the trial court's decision.
That same day, this court also granted defendants' writ application seeking review of the trial court's denial of their motion for a suspensive appeal and ordered the trial court to grant that motion.
Plaintiffs filed a writ application in the Louisiana Supreme Court, seeking review of this court's March 20, 1998 decision ordering the trial court to grant defendants a suspensive appeal. Plaintiffs averred that the trial court's class certification ruling should be reviewed by writ application, not by appeal. On April 1, 1998, the supreme court granted plaintiffs' writ application only to the extent of ordering that this court consider defendants' appeal on an expedited basis. In re: Chemical Release at Bogalusa, 98-0809 (La.4/1/98); 717 So.2d 222.

ISSUES
On appeal, defendants assert the trial court manifestly erred in setting the geographical boundaries of the class beyond the outer limits set by the scientific evidence and in setting the temporal scope beyond the limits revealed by the factual evidence. They also contend the trial court erred in refusing to provide for a mandatory no-opt-out class for punitive damages.

GEOGRAPHIC AND TEMPORAL BOUNDARIES
In the case of Boudreaux v. State, Dept. of Transp. and Development, 96-0137 (La.App. 1 Cir. 2/14/97); 690 So.2d 114, we discussed fully the standard of review that applies in class actions. Therein, we stated that the factual findings upon which a class action certification is based are subject on appeal to the manifest error (clearly wrong) standard. After the trial court makes its determinations of fact, it exercises its discretion to certify the class or not. This discretionary judgment must be reviewed on appeal by the abuse of discretion standard. Boudreaux, 690 So.2d at 119.
We recognize that the establishment of geographic boundaries of a class must be based on evidence in the record. Livingston Parish Police Jury v. Acadiana Shipyards, 598 So.2d 1177 (La.App. 1 Cir.), writs denied, 605 So.2d 1122 (La.1992). Similarly, the establishment of a temporal boundary must be based on evidence in the record. However, the trial court is afforded great discretion in class action certification. Absent an abuse of discretion, the decision of the trial court must be affirmed. Ford v. Murphy Oil U.S.A., 96-2913, 96-2917, 96-2929 (La.9/9/97); 703 So.2d 542. This issue, therefore, turns on a thorough review of the entirety of the evidence, both expert and lay evidence, to determine if the factual basis is present to support the trial court's ruling and whether that ruling is reasonable. See Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049 (La.App. 1 Cir. 3/27/98); 691 So.2d 760; writs denied, 97-0800, 97-0830 (La.4/8/97); 693 So.2d 147.
Both plaintiffs and defendants presented evidence, including expert testimony, concerning the proper geographical boundaries of this class. Plaintiffs' expert, Dr. Francis Courtney, was accepted by the court as an expert in meteorology and air dispersion modeling. He utilized a model to estimate the chemical concentrations at various places and times. Defendants' expert, Dr. Bruce Egan was also qualified as an expert in air dispersion modeling. He, too, used a model to estimate the chemical's dispersion.
Both experts relied on the testimony of David Barnes, a meteorologist who testified for plaintiffs. Mr. Barnes testified concerning *956 the weather conditions before, during and after the explosion, including wind speeds and directions.
In arriving at their opinions, both experts also relied on the testimony of Dr. Vasilis M. Fthenakis, an expert in fluid dynamics and chemical engineering. Dr. Fthenakis testified that at the time of the release the tank car contained approximately 99,500 pounds of nitrogen tetroxide and water. He testified that the release occurred in three stages. The first release occurred through the relief valve of the tank car and lasted approximately forty-five minutes; during this phase 6,000 pounds of chemicals were released into the atmosphere. During the second phase, the explosion, approximately 44,000 pounds of the material were instantaneously expelled. During the third phase, which lasted approximately sixteen hours, the remaining 49,500 pounds were released into the atmosphere.
Dr. Fthenakis also testified that the chemicals released into the atmosphere were different from the chemicals inside the tank car due to chemical reactions that occurred upon release. Furthermore, the composition of the chemicals released differed during the various stages of release. He further testified that the failure of the two air dispersion experts to use this information in constructing their models adversely affected the accuracy of their data. He also opined that, at 200 meters downwind from the release site, the concentration of chemicals was significantly greater than the level opined by Dr. Egan.
The testimony of numerous claimants was also before the trial court. Each described his experience and the damages allegedly suffered. Many were in Bogalusa or in the surrounding area at the time of the release. One claimant was in Franklinton, Louisiana, at the time of the accident; another was in McNeil, Mississippi. Those areas were excluded from the geographical boundaries set by the court. The trial judge heard testimony from claimants located in Tylertown, Mississippi, and McComb, Mississippi, at the time of the incident, and she extended the geographical boundaries to include the locations of those claimants.
The trial court found the expert opinion of Dr. Courtney, plaintiffs' expert, to be more reliable than that of Dr. Egan in developing the geographical boundaries of the class. We find that Dr. Courtney's testimony was a permissible view and the trial court's reliance on it does not constitute manifest error. The trial court also relied on the testimony of numerous individuals who testified concerning their exposure and damages, and on medical testimony concerning the degree of exposure necessary to suffer physical damages and the potential psychological effects in extending the boundaries beyond those suggested by Dr. Courtney. We also find no manifest error in the trial court's reliance on this evidence.
The defendants assert that the trial court erred in not relying solely on expert testimony in setting the geographical boundaries. We disagree. A review of the entirety of the expert testimony reveals that, although careful calculations were made, the reconstruction of the weather, release, and dispersion were based on the experts' very educated opinions, which admittedly hold some level of variance from the actual events that occurred. Additionally, the testimony of these experts speaks only to the physical aspects of the explosion, while the lawsuit seeks damages for both physical and emotional damage.
The expert evidence, combined with the testimony of individuals who were not within the boundaries set forth by Dr. Courtney, but who alleged they were adversely affected, lead us to conclude that the trial court did not abuse its discretion in extending the geographical boundaries beyond those suggested by plaintiffs' expert. Rather, the evidence supports the factual determinations of the trial court and no abuse of discretion occurred in the setting of the geographical boundaries.
We are mindful that at any time before a decision on the merits, the trial court may alter, amend, or recall its class certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action. LSA-C.C.P. art. 592 A(3)(c). The flexibility *957 of this provision further safeguards the parties' interests as this litigation proceeds.
We do, however, agree with the defendants' assertion that the temporal boundary should be reduced. The evidence shows that the tank car arrived at the Gaylord facility on October 10, 1995. Therefore, the trial court abused its discretion in including the dates prior to October 10, 1995 in the temporal boundaries of the class.

MANDATORY NO-OPT-OUT CLASS FOR PUNITIVE DAMAGES
Defendants further assert the trial court erred in failing to establish a mandatory class for punitive damages. They assert that due process requires that a mandatory no-opt-out subclass for exemplary damages be established in order to avoid the potential for repetitive punitive damages.
It is clear from the record and the geographical boundaries set by the trial court that some potential claimants of damages due to this explosion are not residents of Louisiana. Therefore, the proposal of a mandatory class for punitive damages raises the question of whether the Louisiana courts can exercise jurisdiction over the out-of-state plaintiffs.
This issue was addressed in the case of Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), which was a class action filed in Kansas to require a Delaware corporation, whose principal place of business was in Oklahoma, to pay interest to royalty owners on delayed royalty payments. The final class as certified contained 28,100 members; fewer than 1,000 resided in Kansas. Therefore, ninety-seven per cent of the members of the class of plaintiffs lacked any contact with the forum state. Plaintiffs recovered judgment in the trial court, and the Kansas Supreme Court affirmed the judgment over contentions that the Due Process Clause of the Fourteenth Amendment prevented Kansas from adjudicating the claims of all the plaintiffs.
Ultimately, Phillips Petroleum raised the due process issue before the United States Supreme Court. The Court held that constitutional protection from state court jurisdiction is afforded in a higher degree to nonresident defendants in non-class suits than to absent class plaintiffs. The Court stated:
The Fourteenth Amendment does protect "persons," not "defendants," however, so absent plaintiffs as well as absent defendants are entitled to some protection from the jurisdiction of a forum State which seeks to adjudicate their claims. In this case we hold that a forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant. If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel.... Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.
Shutts, 472 U.S. at 810, 105 S.Ct. at 2973 (footnotes and citations omitted).
Following the Shutts case, we find our courts' lack of personal jurisdiction over the potential non-resident claimants precludes a mandatory no-opt-out class for punitive damages. Therefore, the trial court correctly declined to establish such a class.

CONCLUSION
For the reasons assigned, the judgment of the trial court setting the temporal boundaries of the class is amended to extend from October 10, 1995 through October 25, 1995. In all other respects, the judgment of the trial court is affirmed. This case is remanded to the trial court for further proceedings, with plaintiffs to bear the costs of this appeal.
AMENDED AND AFFIRMED AS AMENDED.