807 So.2d 864 (2001)
GAYLORD CONTAINER CORPORATION and Gaylord Chemical Corporation
v.
CNA INSURANCE COMPANIES, et al.
No. 1999 CA 1795.
Court of Appeal of Louisiana, First Circuit.
April 3, 2001.
As Amended on Grant of Rehearing in Part July 19, 2001.
Writ Denied December 7, 2001.
*865 Glenn G. Goodier, New Orleans, Stuart Philip Ross, Richard Seavey, Jodi L. Cleesattle, Washington, D.C., Counsel for Appellant Transportation/CNA Insurance Company.
Edward P. Lobman, Jeanne N. Juneau, New Orleans, Clay H. Phillips, Arthur F. Brandt, Chicago, IL, Counsel for Appellant Westchester Fire Insurance Company.
Ralph S. Hubbard III, Celeste Darmstadter Elliott, New Orleans, Counsel for Appellant Travelers Casualty & Surety Company, f/k/a The Aetna Casualty & Surety Company.
George B. Hall, Jr., Jay Russell Sever, New Orleans, Counsel for Appellants Agricultural Insurance Company and American National Fire Insurance Company.
Gary M. Zwain, Kelly C. Bogart, Metairie, Counsel for Appellant Federal Insurance Company.
Frederick T. Haas, III, Christopher E. Carey, Scott R. Hymel, New Orleans, Counsel for Appellant RLI Insurance Company.
Robert A. Redwine, New Orleans, Counsel for Appellant United National Insurance Company.
*866 Elizabeth Cordes, New Orleans, Counsel for Amicus Curiae Insurance Environmental Litigation Association.
Richard F. Knight, Bogalusa, Thomas O. Kuhns, Andrew R. Running, James C. Joslin, Chicago, IL, Counsel for Appellees/Appellants Gaylord Chemical Corporation and Gaylord Container Corporation.
James S. Farmer, Ronnie G. Penton, Michael J. Paduda, Jr., Sondra A. Cheek, Bogalusa, Stephen B. Murray, Gerald E. Meunier, Suzette Peychaud-Bagneris, Joseph M. Bruno, Vernon P. Thomas, New Orleans, Reginald J. Laurent, Slidell, Daniel E. Becnel, Jr., Reserve, Roy K. Burns, Covington, Wendell H. Gauthier, Metairie, Thomas M. Discon, Jesse L. Wimberly, III, Mandeville, Calvin C. Fayard, Jr., Denham Springs, Raymond Charles Vinet, Sr., Dr. Edward A. Robinson, III, Walter C. Dumas, Donna U. Grodner, Baton Rouge, W. Hugh Sibley, Greensburg, Counsel for Appellees/Appellants Intervenors The Plaintiffs' Liaison Committee.
James R. Sutterfield, Charmagne A. Padua, New Orleans, Counsel for Appellee Reliance National Insurance Company.
C. Noël Wertz, Baton Rouge, Counsel for Amicus Curiae Commission of Insurance Louisiana Department of Insurance.
Before: PETTIGREW, J., and CIACCIO and SEXTON, JJ., Pro Tem.[1]
CIACCIO, J. Pro Tem.

Facts and Procedural History
This case arises from the October 23, 1995 explosion of a railcar at the Gaylord Chemical Corporation[2] plant in Bogalusa, Louisiana. Gaylord Chemical manufactures dimethyl sulfide (DMS). DMS reacts with an oxidizer, nitrogen tetroxide (N2O4), to produce dimethyl sulfoxide (DMSO). Gaylord ordered a railcar of N2 O4 from Vicksburg Chemical Corporation. Railcar UTLX 82329, containing N2O4, arrived at Gaylord's Bogalusa plant on October 10, 1995. Toby Frierson, the assistant plant manager for Gaylord Chemical at that time, testified that Gaylord employees soon discovered that the railcar's contents were contaminated with water. Frierson was aware that N2O4 and water react to form nitric acid. Frierson also knew that the railcar's inner compartment was made of carbon steel, a substance that is "very reactive" with nitric acid. Frierson testified that Gaylord's Fire Protection Plan listed chemical reactions as potential sources of fire risk. One example of such risk was that "mild steel will react violently with nitric acid if placed together."
Frierson knew the contaminated N2O4 had to be removed from the railcar. He contacted Vicksburg Chemical and requested that Vicksburg Chemical send its HAZMAT team to the site. Frierson made plans for the transfer of the contaminated N2O4 to stainless steel tank trucks, which could hold nitric acid. He also consulted with experts in metallurgy and transportation.
Gaylord attempted to unload the contents of the railcar into the stainless steel tank trucks. Frierson testified that by October 13, he believed the railcar was almost empty. However, the gauge on the railcar continued to indicate that the pressure in the car was rising.
*867 At approximately 4:45 p.m. on October 23, 1995, the railcar's south end cap blew off, sending the 90-ton railcar hurtling northward on the railroad spur, unimpeded by its wheel chocks, crashing through the spur's end stops, and plowing through thirty feet of soft ground and into the DMSO reactor structure before coming to a rest. Frierson was standing seven steps from the railcar when it exploded. The contents of the railcar were released, primarily in a massive brown and orange cloud, but also onto the surrounding soil. The Bogalusa Fire Department was on the scene at the time of the explosion.
As a result of the explosion, the interior of the railcar was exposed, and the reason for the increased pressure in the tank became evident: the dip tubes, which act as straws going nearly to the bottom of the railcar and through which unloading would occur, had been eaten away by the corrosive nitric acid. Gaylord added water inside the railcar to dilute the remainder of nitric acid after each unloading attempt. Because the dip tubes were virtually nonexistent, the addition of water only served to increase the pressure in the railcar. When the pressure mounted to 375 pounds per square inch, the pressure relief valve on the railcar opened, as it was designed to do, and the contents of the railcar began spewing forth. The valve remained open until the explosion occurred.
Following the explosion, numerous tort suits were filed in Louisiana and Mississippi. The Louisiana state court suits were consolidated and certified as a class action. The Louisiana First Circuit Court of Appeal amended and, as amended, affirmed the class certification ruling.[3] Gaylord filed suit seeking a judgment declaring that the alleged losses are covered under the ten insurance policies issued to Gaylord Container by the ten insurer defendants. Individual plaintiffs, who alleged bodily injury, personal injury, and property damage resulting from the incident, were allowed to intervene in this action.
The ten insurer defendants issued commercial general liability policies that provided liability coverage to Gaylord for the policy year in question, November 17, 1994, to November 17, 1995. The primary insurer is Transportation/CNA Insurance Company (Transportation). Westchester Fire Insurance Company (Westchester) is the lead umbrella insurer. The excess umbrella insurers are Reliance National Insurance Company (Reliance); Travelers Casualty and Surety Company (Travelers) (formerly known as Aetna Casualty & Surety Company (Aetna)); Agricultural Insurance Company (Agricultural); Federal Insurance Company (Federal); RLI Insurance Company (RLI); United National Insurance Company (United); American National Fire Insurance Company (American), and Royal Indemnity Company. Royal Indemnity Company entered into a conditional settlement agreement with the plaintiffs following the plaintiffs' opening statement.
During all pretrial proceedings and throughout the bench trial, the parties and the trial court presumed the Louisiana Supreme Court's opinion in South Central Bell Telephone Company v. Ka-Jon Food Stores of Louisiana, Inc., 93-2926 (La.5/24/94), 644 So.2d 357, vacated on other grounds, 93-2926 (La.9/15/94), 644 So.2d 368, was the operative law. The Ka-Jon court found that the absolute pollution exclusion is ambiguous as a matter of law because a literal reading can lead to absurd *868 consequences. See id. 93-2926 at 11-12, 644 So.2d at 364. The supreme court held the pollution exclusion would preclude coverage for: "(1) all damages or losses resulting from intentional acts of pollution or pollution causing activities, including remedial damages for environmental cleanup operations, and (2) environmental damages resulting from fortuitous pollution occurrences, including remedial damages for environmental cleanup operations." Id. 93-2926 at 12-13, 644 So.2d at 364. Coverage for fortuitous acts of pollution was excluded only as to environmental damage, not to other types of damage. See id. 93-2926 at 13-14, 644 So.2d at 365.
After the conclusion of the Gaylord trial, but prior to the trial court's issuance of reasons for judgment, the Louisiana Supreme Court, in a 4-3 decision, rendered its judgment in Ducote v. Koch Pipeline Co., L.P., 98-0942 (La.1/20/99), 730 So.2d 432.[4] The majority observed that Ka-Jon lacks any precedential value. See id. 98-0942 at 4, n. 1, 730 So.2d at 436, n. 1. The majority concluded that nothing in the total pollution exclusion limited its applicability to "active industrial polluters or businesses which knowingly emit pollutants over extended periods of time." Id. 98-0942 at 4, 730 So.2d at 436. The majority stated that the pollution exclusion "applies regardless of whether the release was intentional or accidental, a one-time event or part of an on-going pattern of pollution." Id. 98-0942 at 4-5, 730 So.2d at 437.
On February 25, 1999, the trial court signed a judgment for which it gave extensive written reasons. The judgment was rendered in favor of Gaylord and against Certain Insurers[5], and held that the insurance policies provided coverage for the October 23, 1995 explosion at the Gaylord chemical facility in Bogalusa, Louisiana. The court further ordered that there be judgment in favor of Reliance and against Gaylord, declaring the Reliance insurance policy did not provide coverage for the October 23, 1995 incident.
The trial court reasoned that under the Louisiana Supreme Court's decision in Ducote, the pollution exclusions, when read alone, are "facially unambiguous." Eight of the nine Gaylord policies, those of Certain Insurers, have similar hostile fire exceptions to their pollution exclusions. The court concluded that the eight hostile fire exceptions restore coverage that would otherwise be barred by the Ducote court's interpretation of the pollution exclusions. The policy issued by Reliance has a unique hostile fire exception, which the trial court concluded did not restore coverage taken away by the pollution exclusion.
The trial court's judgment also ordered that the policy issued by RLI and incorporated by United be reformed, deleting the punitive damages and the toxic and foreign matter exclusions.
On April 7, 1999, the trial court signed an "Amended Judgment." The amended judgment recognized the intervenors' interests in this proceeding, which parallel the interests of Gaylord. The judgment also stated that "the determination as to whether any individual plaintiff's claim in any of the underlying actions constitutes `bodily injury,' `property damage' or `personal injury' is reserved." In all other respects, the amended judgment was identical to the judgment of February 25, 1999.
*869 The Certain Insurers appealed the trial court's finding that coverage existed under their policies. Gaylord and Intervenors appealed the trial court's judgment as to Reliance. This court implemented a briefing schedule; briefs and reply briefs were filed. This court heard oral argument on November 8, 2000.
On December 19, 2000, the Louisiana Supreme Court issued a 4-3 decision in Doerr v. Mobil Oil Corporation, XXXX-XXXX (La.12/19/00), 774 So.2d 119.[6] The court stated that "Ducote represented a significant departure from the interpretation of pollution exclusion clauses in Louisiana, and, more importantly, because Ducote runs counter to the true intent of the exclusion, we overrule it at this time." Id. XXXX-XXXX at 21, 774 So.2d at 132. On January 10, 2001, this court issued an order allowing all parties to submit supplemental briefs in light of the Louisiana Supreme Court's decision in Doerr. On February 23, 2001, this court issued an order granting the Louisiana Department of Insurance's motion for leave to file a supplemental brief of amicus curiae.

Assignments of Error
The issues initially presented to this court for review can be summarized generally as:
1. Should Louisiana or Illinois law govern resolution of this case?
2. Under Ducote, do the pollution exclusions contained in the policies exclude coverage ?
3. Is coverage restored under the hostile fire exceptions to the pollution exclusions?
4. Should RLI's and United's policies be reformed thereby removing the punitive damages and toxic and foreign matter exclusions?
In their supplemental brief, the Intervenors expressly abandon their assignment of error regarding choice of law; therefore, we do not address that issue. Louisiana law was the operative law throughout all pretrial and trial proceedings.
In supplemental briefs, Gaylord, the Intervenors, and the nine insurer defendants address the impact of the Louisiana Supreme Court's decision in Doerr, and its reversal of Ducote, on the consolidated appeals pending before this court. As a general rule, an appellate court is bound to adjudge a case before it in accordance with the law existing at the time of the appellate court's decision. Cain v. Winn-Dixie Louisiana, Inc., 98-0792, p.5 (La.App. 1 Cir. 9/24/99), 757 So.2d 712, 715, writ denied, 99-3037 (La.12/17/99), 752 So.2d 858. Where the law has changed during the pendency of the suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment that may have been correct under the law in effect when it was rendered. Id. 98-0792 at 5-6, 757 So.2d at 715; Segura v. Frank, 93-1271, 93-1401, p. 6 (La.1/14/94), 630 So.2d 714, 725, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). Thus, we will analyze the issues in this matter in accordance with the standards set forth in Doerr.

Standard of Review
A court of appeal may not disturb the conclusions reached by the trial court regarding factual matters in the absence of "manifest error" or unless the particular finding of fact is "clearly wrong." Rosell *870 v. ESCO, 549 So.2d 840, 844 (La.1989). When addressing legal issues, the reviewing court gives no special weight to the findings of the trial court. It conducts a de novo review of questions of law and renders a judgment on the record. See State, Through Louisiana Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 95-2355, p. 5 (La.App. 1 Cir. 8/21/96), 694 So.2d 316, 319.
The determination of whether a contract of insurance is clear or ambiguous is a question of law. Billiot v. Terrebonne Parish Sheriff's Office, 98-0246, pp. 9-10 (La.App. 1 Cir. 2/19/99), 735 So.2d 17, 24, writ denied, 99-1376 (La.7/2/99), 747 So.2d 22. However, whether a policy of insurance provides coverage is not a purely legal question when a factual finding is necessary to reach the coverage issue. Id. 98-0246 at 10, 735 So.2d at 24.
The trial court's judgment was rendered under Ducote, a legal error in light of the supreme court's recent decision in Doerr. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Evans v. Lungrin, 97-0541, p. 7 (La.2/6/98), 708 So.2d 731, 735. When a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Id.
Herein, no prejudicial error of law occurred. The trial court recognized the uncertainty of the Ducote decision. In "Reasons for Judgment," the trial court observed that at the time the reasons were written Ducote was not a final decision, an application for rehearing having been filed. The trial court did not "pretermit other issues" when rendering its judgment pursuant to the dictates of Ducote. Rather, the trial court stated that "having conducted pre-trial motions and the bench trial pursuant to Ka-Jon, I believe that my findings pursuant to pre-Ducote law should also be a part of my reasons for judgment." Therefore, to the extent the factual findings of the trial court remain relevant under Doerr, they will not be set aside unless they are clearly wrong or manifestly erroneous. With these principles in mind, we address whether the absolute pollution exclusions in the nine insurer defendants' policies exclude coverage for the October 23, 1995 occurrence at the Gaylord chemical facility in Bogalusa, Louisiana.

Pollution Exclusion
The absolute pollution exclusions contained within the various Gaylord policies, although not identical, are similar to each other. For example, the pollution exclusion in the Westchester Fire Insurance Company policy provides that the policy does not apply to:
J. (1) `Bodily Injury' or `Property Damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants (as defined below):
* * * *
(2) Any request, demand, order, `Claim,' or `Suit' by the `Insured,' a governmental authority, or others for payment under this policy for any loss, cost, or expense to test, monitor, clean-up, remove, contain, treat, detoxify, or neutralize, or any way respond to, or assess the effects of pollutants. To the extent that any of the above is determined to be `Bodily Injury' or `Property Damage,' said `Bodily Injury' or `Property Damages' is also excluded.

*871 For purposes of this Exclusion J, the term `pollutants' means any solid, liquid, gaseous or thermal irritant or contaminant, including without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste and the term `waste' includes materials to be recycled, reconditioned or reclaimed.
* * * *
An insurance policy is an aleatory contract subject to the same basic interpretive rules as any other contract. Doerr, XXXX-XXXX at 4, 774 So.2d at 123. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ.Code art. 2046. However, when absurd results are possible, the contract is ambiguous, and the courts must construe the provision in a manner consistent with the "nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ.Code art. 2053; Doerr, XXXX-XXXX at 6, 774 So.2d at 124.
In Doerr, the total pollution exclusion excluded coverage for any injury that "would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape" of any "solid, liquid, gaseous, or thermal irritant or contaminant" at any time. Id. XXXX-XXXX at 5-6, 774 So.2d at 124. The pollution exclusion in Doerr was identical to the exclusion in Ducote, except that the hostile fire exception was not present in the Ducote exclusion. See id. XXXX-XXXX at 7, 774 So.2d at 125.
The Louisiana Supreme Court quoted and rejected language in Ducote stating that the pollution exclusion would apply "regardless of whether the release was intentional or accidental, a one-time event or part of an on-going pattern of pollution." See id. XXXX-XXXX at 8, 11, 20, 25, 774 So.2d at 125, 127, 132, 134-35 (quoting Ducote, 98-0942 at 4-5, 730 So.2d at 437). In disapproving of the holding in Ducote, the supreme court explained, "to give the pollution exclusion the broad reading found in Ducote would contravene the very purpose of a CGL policy, without regard to the realities which precipitated the need for the pollution exclusionthe federal government's war on active polluters." Id. XXXX-XXXX at 11, 774 So.2d at 127. "[B]ecause the pollution exclusion was designed to exclude coverage for environmental pollution only, it should be interpreted so that the clause `will not be applied to all contact with substances that may be classified as pollutants.'" Id. XXXX-XXXX at 12, 774 So.2d at 127-28 (quoting 9 Lee R. Russ, Couch on Insurance § 127:6 n. 62 (3rd ed. 1997)).
The supreme court concluded in Doerr that a literal reading of the total pollution exclusion would lead to absurd results. Id. XXXX-XXXX at 6, 774 So.2d at 125. The Doerr court observed that the total pollution exclusion, the generally used exclusion today, is similar to the "absolute" pollution exclusion. See id. Thus, a literal reading of the absolute pollution exclusions contained in the nine insurer defendants' policies leads to absurd results, and the absolute pollution exclusions are ambiguous as a matter of law. See La. Civ.Code art. 2046. A proper interpretation of the pollution exclusions must be determined. Insurance policies are construed to effect, not deny, coverage, and any ambiguity should be interpreted in favor of the insured. Doerr, XXXX-XXXX at 6, 774 So.2d at 124-25.
The Louisiana Supreme Court identified several fact-based considerations in determining *872 the applicability of a total pollution exclusion:
(1) Whether the insured is a "polluter" within the meaning of the exclusion;
(2) Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and
(3) Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.
Id. XXXX-XXXX at 25, 774 So.2d at 135.
The supreme court instructs that the Doerr analysis is "similar to the one that the Commissioner of Insurance has directed every insurer to make before denying a claim." Id. XXXX-XXXX at 27, n. 19, 774 So.2d at 136, n. 19. The court quotes at length the 1997 advisory letter issued by the Louisiana Department of Insurance as a guide to insurers in their applications of standard pollution exclusions.[7]See James H. Brown, Louisiana Commissioner of Insurance, Advisory Letter 97-01 (June 4, 1997). Advisory Letter 97-01 states:
The parameters for a reasonable denial of coverage and/or refusal to provide a defense under a standard pollution exclusion, are set by (1) the regulatory record which establishes the stated purpose of the exclusion and (2) the dictates of the Louisiana Supreme Court found in South Central Bell v. Ka-Jon Food Stores of Louisiana, Inc., 644 So.2d 357 (La.1994).
Advisory Letter 97-01 at 3.
Under the facts of this case, we find it unnecessary to engage in an extensive analysis of the Doerr three-step inquiry. The pollution exclusion was designed to exclude coverage for environmental pollution only. Doerr, XXXX-XXXX at 12, 774 So.2d at 127. As observed by the trial court, Gaylord is not seeking a defense or indemnity for suits that relate to environmental cleanup claims arising out of the October 23, 1995 incident. The exclusion was "not meant to exclude coverage for routine accidents which incidentally involved a chemical agent ...." See id. XXXX-XXXX at 23, 774 So.2d at 134 (quoting James H. Brown, Louisiana Commissioner of Insurance, Preface to Advisory Letter 97-01, p. 1 (September 1999)). Guided by the Doerr decision, we hold that when a fortuitous event such as an explosion occurs, and that event incidentally involves a chemical agent, the absolute pollution exclusion operates to exclude coverage for environmental damage only.
For the above stated reasons, we find no error in the judgment of the trial court in favor of Gaylord and against Certain Insurers, holding that the insurance policies provide coverage for the October 23, 1995 explosion at the Gaylord Chemical facility in Bogalusa. The trial court erred in finding judgment in favor of Reliance and against Gaylord because the pollution exclusion in the Reliance policy similarly fails to exclude coverage of the instant claims.

Hostile Fire Exceptions to the Pollution Exclusions
Having determined that the pollution exclusions contained in the Certain Insurers' policies and the Reliance policy do not exclude coverage for the October 23, 1995 incident, we pretermit discussion of the effects of the hostile fire exceptions to the pollution exclusions.

RLI Insurance Company and United National Insurance Company
The RLI and United policies present additional issues not raised by the other *873 insurers. The United policy incorporates consistent provisions from the underlying RLI policy; therefore, these policies are considered together. Three separate exclusions contained within RLI's 1994 1995 policy are at issue: (1) a pollution exclusion, (2) a punitive damages exclusion, and (3) a toxic and foreign matter exclusion. RLI and United contend that the claims from the October 23, 1995 explosion are not covered due to these exclusions. The pollution exclusion already has been discussed. We now turn to the trial court's judgment reforming the RLI policy so as to eliminate the punitive damages exclusion and the toxic and foreign matter exclusion.
The evidence clearly establishes that the parties intended that the 19941995 policy be a renewal policy. Directly under the policy number, on the second line of the declaration page, is written "Renewal of RXU816426." In correspondence between the parties, the policy is referred to as a renewal. Moreover, during depositions and trial testimony the witnesses often used the term renewal when speaking of the 19941995 policy.
In general, a renewal contract contains the same terms and conditions as the existing policy. The word "renewal" in the context of insurance has a definite legal meaning. "Renewal" means that the original policy shall be repeated in substance and in fact. The new policy is identical, except as to the date of its expiration. See Maryland Casualty Company v. Kramel, 80 So.2d 897, 900 (La.App. 2 Cir.1955).
Despite overwhelming evidence to the contrary, RLI argues that the 1994 1995 policy is not a renewal policy. In support thereof, RLI details differences between the 19931994 expiring policy and the 1994 -1995 policy. However, the existence of these differences does not change the policy's status as a renewal. Rather, if there is a change in the conditions or terms of the policy, it is the duty of the insurer to call attention to the change; otherwise, the change can be no part of the contract, and the renewal contract is subject to reformation to make it conform to the original contract. See Maryland, 80 So.2d at 901. Having decided the evidence supports the trial court's conclusion that the 19941995 policy was a renewal policy, we turn our attention to whether the insurers, RLI and United, met their duty to call the insured's attention to the policies' changes.
Montgomery & Collins, Inc. was the wholesale broker for RLI and United, with Jacob Blythe as the contact agent. The firm of Holmes Murphy acted as the insurance agency for Gaylord Container. Doug Reichardt, senior account executive with Holmes Murphy, testified that RLI became one of Gaylord's excess comprehensive general liability carriers for the 19921993 policy year. After RLI's coverage was bound and the premiums paid for the 1992-1993 policy period, Holmes Murphy discovered that the policy language did not follow form; it did not track the language of Westchester, the lead umbrella policy. By letter dated June 28, 1993, Patricia Griffith, a senior analyst with Holmes Murphy, contacted Blythe and informed him that the RLI policy did not follow form. In particular, Holmes Murphy noted Gaylord's objection to the inclusion of a punitive damages exclusion in the 19921993 policy.
On September 16, 1993, Griffith again wrote to Blythe regarding the 19921993 policy. She instructed Blythe that she wanted his pricing for the next policy period to reflect a policy that would follow form to the Westchester policy. She specifically requested that the punitive damages exclusion be omitted. Griffith's letter *874 states, "I want all layers, above the Westchester Fire policy, to be follow-form. I don't want a bunch of endorsements, taking coverage away." On November 1, 1993, Griffith again wrote Blythe stating that the punitive damages exclusion must be deleted. The letter states, "At their [RLI and United] level, they should be completely follow form." Blythe forwarded a copy of this letter to Michael W. Lehde, a senior casualty underwriter with RLI, warning, "We're obviously in danger of being replaced." RLI ultimately agreed to delete the punitive damages exclusion from the 19931994 policy.
Shortly thereafter, in December of 1993, RLI adopted new umbrella and excess policy forms. The policy change notification was mailed to Montgomery & Collins that same month. According to Lehde's cover letter to Blythe, the new form "will be for new and renewal accounts." This new form contained the punitive damages and toxic and foreign matter exclusions in the body of the policy.
Prior to the expiration of the 19931994 RLI policy, Griffith wrote to Blythe regarding the renewal policy to be issued for 19941995. Griffith's letter of October 25, 1994, states that the 19941995 policy's terms and conditions were to be "the same as expiring." Reichardt testified this phrase meant "the same as last year." On October 27, 1994, Holmes Murphy received a premium quotation from Montgomery & Collins. Though the quote mentioned several exclusions, including "Toxic/Foreign Matter," it did not refer to a punitive damages exclusion. On November 7, 1994, Holmes Murphy, through Griffith, instructed Montgomery & Collins to bind the excess umbrella insurers.
Montgomery & Collins issued the binder for the RLI and United policies on November 8, 1994. Though the binder contained a list of exclusions, it did not mention the punitive damages exclusion. The list of exclusions did include "Toxic/Foreign Matter." However, there was no explanation as to the meaning of this exclusion. Reichardt testified that he had never seen a "Toxic/Foreign Matter" exclusion in his twenty years of insurance experience and had no idea what its listing in the binder meant. The binder also contained a statement: "NO FLAT CANCELLATION PERMITTED." Paragraph 14 of the binder specified that the insured could not "cancel flat" the coverage confirmed by the binder, meaning that the "earned premium must be paid for the time coverage has been in force." By cover letter dated November 16, 1994, Thomas M. Steffen, Assistant Treasurer for Gaylord Container, forwarded the executed finance agreement and down payment for the renewal of the insurance policies.
Reichardt testified that he received the 19941995 policy on December 2, 1994, after the November 17, 1994 policy period began. On its face, the policy appeared to follow the same format as the 19921993 policy. Moreover, Reichardt testified that there was no reduction in the premium that might reflect a reduction in coverage due to the addition of the punitive damages and the toxic and foreign matter exclusion. The second page of the policy listed exclusions; however, it did not list the punitive damages exclusion.
According to Reichardt, by the time Holmes Murphy received the 19941995 policy, it was too late to do anything about the inclusion of the new exclusions due to the "no flat cancellation" clause. Reichardt stated that receipt of a policy that was inconsistent with the binder left Gaylord with little recourse. Cancellation of the policy would result in a gap in insurance coverage and a loss of the premium paid. Reichardt decided to contact Blythe at Montgomery & Collins, inform him that *875 the punitive damage exclusion was unacceptable, and ask that the carrier do what was originally intended by the binder.
Thereafter, at an August 18, 1995 meeting, Holmes Murphy notified Gaylord of the punitive damages exclusion contained within the RLI policy. The "Renewal Policy Delivery Notes" reflect that Holmes Murphy indicated the "Need to eliminate Punitive Damages Exclusion." On October 10, 1995, Griffith wrote to Blythe stating that the punitive damages exclusion "must be corrected in order for us to renew this policy."
Knowing that the insured objected to the inclusion of the punitive damages exclusion, RLI unilaterally inserted the provision into the renewal policy. Neither the quote nor the binder identified the inclusion of this provision. RLI also inserted the "Toxic/Foreign Matter" exclusion into the policy. Though the exclusion was listed in the quote and in the binder, no explanation was offered as to the purpose or contents of this provision prior to the payment of the premium and receipt of the insurance policy. Lehde testified that he communicated the changes in the 1994 1995 policy to the wholesale broker, Montgomery & Collins, by way of its general notice in December of 1993 that the policy form was to be changed. Lehde testified that he expected RLI's wholesale broker, Montgomery & Collins, to notify the retail agent, Holmes Murphy, of the changes in the policy form. Lehde indicated he expected Holmes Murphy to then notify the insured, Gaylord, of the changes. Lehde acknowledged that he personally did nothing to verify that the insured knew of the changes in the form, and recognized that the insured did not receive copies of the policies until after they were purchased.
RLI and United argue that the insured's delay in objecting to the changes in the renewal policy equates to an acceptance of the policy terms. However, the failure of an insured to read the contracts of insurance does not relieve the insurer of its duty to call an insured's attention to the changes made to a renewal policy. An insured has the right to presume that the policies were issued in accordance with the original policy, until expressly notified to the contrary. Crowell v. New Hampshire Fire Ins. Co., 147 So. 762, 767 (La.App. 2 Cir.1933).
We find the notice provided to both Holmes Murphy and the insured concerning the changes made to this renewal policy was inadequate. Accordingly, we find no error in the trial court's decision to reform the RLI and United policies, striking the punitive damages and the toxic and foreign matter exclusions.

Conclusion and Decree
For the foregoing reasons, the portion of the trial court's judgment in favor of Gaylord Chemical Corporation, Gaylord Container Corporation and the Intervenors, finding the policies of insurance issued by Transportation/CNA Insurance Company, Westchester Fire Insurance Company, Travelers Casualty and Surety Company (formerly known as Aetna Casualty & Surety Company); Agricultural Insurance Company; Federal Insurance Company, RLI Insurance Company, United National Insurance Company, and American National Fire Insurance Company provide coverage for the October 23, 1995 occurrence, hereby is affirmed. The portion of the trial court's judgment finding the policy of insurance issued by Reliance National Insurance Company does not provide coverage for the October 23, 1995 occurrence is reversed, and judgment is entered in favor of Gaylord Chemical Corporation, Gaylord Container Corporation and Intervenors. *876 All costs of this appeal are to be borne by the named insurers.
AFFIRMED IN PART; REVERSED IN PART.

CONCURRING OPINION
SEXTON, J., Concurring.
I write to note that if the three-step analysis of Doerr (Doerr v. Mobil Oil Corp. 00-CC-0947) is carefully applied to the instant case, coverage may be questionable. There can be no doubt that there was a "discharge" of a "pollutant" in this case. Thus factors two and three of Doerr are obviously present. The close question is whether Gaylord is a "polluter" within the meaning of the exclusion.
Gaylord certainly deals with any number of dangerous substances, some of which have escaped in previous events. Furthermore, Gaylord regularly emits chemicals that present potential health concerns. These emissions require special evaluation and permitting by both the state and federal government.
However, my reading of Doerr also causes me to agree that Doerr requires a holding that the instant fortuitous "onetime" explosion is covered under the policies at issue. I therefore concur in the result here.
Before: PETTIGREW, J., and CIACCIO and SEXTON, JJ., Pro Tem.[1]

ON REHEARING
PER CURIAM.
The application for rehearing is granted for the limited purpose of making the following corrections to our original opinion.
We amend page 867 of our original decision to change the name of "Travelers Insurance Company (Travelers) (formerly known as Aetna Casualty & Surety Company (Aetna))" to "Travelers Casualty and Surety Company (Travelers) (formerly known as Aetna Casualty & Surety Company (Aetna))."
We further amend the Conclusion and Decree found on page 875 to change the name of "Travelers Insurance Company (formerly known as Aetna Casualty & Surety Company)" to "Travelers Casualty and Surety Company (formerly known as Aetna Casualty & Surety Company)."
In all other respects, the application for rehearing is denied.
[Editor's Note: Amendment incorporated for publication purposes.]
SEXTON, J., agrees with the per curiam and concurs in the denial of the rehearing.
NOTES
[1] Judge Philip C. Ciaccio, retired, and Judge Fred C. Sexton, Jr., retired, are serving as judges pro tempore by special appointment of the Louisiana Supreme Court.
[2] Gaylord Chemical Corporation is a wholly owned subsidiary of Gaylord Container Corporation and is an additional insured on Gaylord Container's policies. The two corporations collectively are referred to as "Gaylord."
[3] Hollaway v. Gaylord Chemical Corp., 98-0828 (La.App. 1 Cir. 12/28/98), 730 So.2d 952.
[4] A rehearing was granted in Ducote only to clarify some procedural aspects of the original opinion. See Ducote v. Koch Pipeline, Co., L.P., 98-0942 (La.2/26/99), 730 So.2d 441 (on rehearing) (per curiam).
[5] Eight of the insurer defendants, referred to collectively as "Certain Insurers," are Transportation, Westchester, Aetna, Agricultural, Federal, RLI, United, and American.
[6] A rehearing was granted in Doerr solely to correct a misstatement of fact and clarify the decree. See Doerr v. Mobile Oil Corporation, XXXX-XXXX (La.3/16/01),782 So.2d 573(on rehearing) (per curiam).
[7] As used in Advisory Letter 97-01, the phrase "standard pollution exclusion" encompasses both the original absolute pollution exclusion as well as its subsequent revisions and its progeny, including the total pollution exclusion. See Advisory Letter 97-01 at 1, n. 1.
[1] Judge Philip C. Ciaccio, retired, and Judge Fred C. Sexton, Jr., retired, are serving as judges pro tempore by special appointment of the Louisiana Supreme Court.