# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 26, 2022

Lyle W. Cayce
Clerk

No. 21-30707

Central Crude, Incorporated,

*Plaintiff—Appellant*,

*versus*

Liberty Mutual Insurance Company; Great American Assurance Company, incorrectly named Great American Insurance Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:17-CV-308

Before Davis, Dennis, and Higginson, *Circuit Judges*.
W. Eugene Davis, *Circuit Judge*:

Plaintiff-Appellant Central Crude, Inc. ("Central Crude") challenges the district court's interpretation of the "total pollution exclusion endorsement" in its policy with Defendant-Appellee Liberty Mutual Insurance Company ("Liberty Mutual").[1] We agree with the district court

---

[1] Defendant-appellee Great American Assurance Company ("Great American") participates as Central Crude's excess insurer.

that coverage for Central Crude's environmental pollution claim is excluded under Liberty Mutual's policy.  Therefore, we AFFIRM.

## I. BACKGROUND

In January 2007, Central Crude discovered a crude oil leak on its property and a neighboring tract owned by Chevron in Paradis, Louisiana.  Of the four to five acres of property covered in oil, Central Crude claimed that "less than a half acre" was on its property.  Central Crude subsequently reported the leak to the Louisiana Department of Environmental Quality ("LDEQ"), as it was required to do.  Central Crude then retained a contractor, ES&H Consulting & Training Group, to perform remediation work.  Central Crude paid approximately one million dollars to the contractor to perform this work.  Apparently, the property has not been completely remediated, and according to Central Crude's representative in 2019, it is possible that the spill is ongoing.  Although remediation efforts have continued for over fifteen years, the source of the leak remains unclear.  Specifically, there has been no determination as to whether the spill occurred from Central Crude's pipelines or from Chevron's wells, or whether (as Central Crude's representative testified was possible) it was simply the result of oil seeping from the ground.

Central Crude had a commercial general liability ("CGL") policy with Liberty Mutual.  The insurance policy requires Liberty Mutual to pay sums "to which [the] insurance applies" and to defend Central Crude against suits for covered damages.  The policy also contains a "total pollution exclusion endorsement" which limits coverage as follows:

> This insurance does not apply to: . . .
>
> f. **Pollution**
>
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part ***but for the actual, alleged***

*or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.*

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that *any insured* or others test for, monitor, *clean up, remove,* contain, treat, detoxify or neutralize, *or in any way respond to, or assess the effects of "pollutants"*; or

. . . .

(emphasis added).

Central Crude sought coverage from Liberty Mutual for the costs it incurred in remediating its property in Paradis. Initially, Liberty Mutual agreed to provide limited coverage, but ultimately informed Central Crude on August 23, 2007, that there was "no coverage for the claim."

On January 3, 2008, Columbia Gulf Transmission Company ("Columbia Gulf") sued Central Crude and others in state court (the "CGT Lawsuit"), alleging that the spill threatened to damage Columbia Gulf's natural gas pipeline located on property adjacent to the Paradis spill. The CGT Lawsuit alleged that the spill occurred on "Chevron's tract" and that the source of the spill "could only have been the pipelines owned and/or operated by Central Crude, Inc. or Chevron's [w]ells." Citing to the total pollution exclusion, Liberty Mutual refused to defend Central Crude in the CGT Lawsuit.

In January 2017, Central Crude filed this lawsuit in state court seeking: (1) coverage for past and future expenses it incurred in cleaning up the Paradis spill; (2) coverage for defense costs in connection with the CGT Lawsuit; and (3) damages, penalties, and attorney fees for Liberty Mutual's alleged bad faith denial of coverage.

Liberty Mutual removed the case to federal district court and promptly moved for summary judgment on both coverage, and bad faith.

No. 21-30707

The district court determined that the total pollution exclusion barred coverage for Central Crude's claims and granted summary judgment in favor of Liberty Mutual. Central Crude moved for reconsideration, and the district court denied the motion. Central Crude timely appealed.

## II. DISCUSSION

This Court reviews the district court's grant of summary judgment de novo.[2] Under Rule 56(a), a movant is entitled to summary judgment when it demonstrates that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

The resolution of this insurance coverage dispute turns on the interpretation of the total pollution exclusion in Central Crude's CGL policy with Liberty Mutual. Under Louisiana law,[4] an insurance policy is a contract between the parties and is construed under the same general rules for interpreting contracts.[5] The parties' intent, as reflected by the words of the policy, determines the extent of coverage.[6] If a policy is clear and expresses the intent of the parties, the agreement must be enforced as written.[7] However, an insurance policy should not be interpreted to achieve an absurd

---

[2] *Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020).

[3] *Id.* (internal quotation marks and citation omitted).

[4] When jurisdiction is based on diversity, this Court must apply the substantive law of the forum state, here Louisiana. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R. v. Tompkins*, 304 U.S. 64 (1938)).

[5] *Blackburn v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 784 So. 2d 637, 641 (La. 2001).

[6] *Id.*

[7] *Bossier Plaza Assocs. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 813 So.2d 1114, 1119 (La. App. 2d Cir. 2002).

result.[8]  Further, because the purpose of liability insurance is to afford the insured protection from damage claims, policies should be construed to effect, and not to deny coverage.[9]  Nonetheless, an insurer has the right to limit coverage in any manner it desires, unless those limitations conflict with law or public policy.[10]

Central Crude, as the party seeking coverage, has the burden of proving that the Paradis spill falls within the CGL policy's terms.[11]  Liberty Mutual has the burden of proving the applicability of an exclusionary clause.[12]  If Liberty Mutual unambiguously shows that an exclusion applies, it will not owe Central Crude indemnification for past or future remediation costs, or a duty to defend and indemnify in the CGT Lawsuit.[13]  Additionally, Liberty Mutual would not be liable for any penalties and fees under Louisiana's bad faith statutes.[14]

Central Crude seeks both defense and indemnity from Liberty Mutual.  "An insurer's duty to defend suits on behalf of an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a

---

[8] *Magnon v. Collins*, 739 So.2d 191, 197 (La. 1999).

[9] *See Yount v. Maisano,* 627 So.2d 148, 151 (La. 1993).

[10] *Elliott v. Cont'l Cas. Co.*, 949 So. 2d 1247, 1254 (La. 2007).

[11] *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000).

[12] *Id.*

[13] *La. Citizens Prop. Ins. Co. v. Age*, 104 So. 3d 675, 677 (La. App. 4 Cir. 2012) ("It is settled that when an exclusion to a policy is applicable, the insurer owes no duty to defend or indemnify the insured.").

[14] Under Louisiana law, an insurer breaches its duty of good faith by failing to timely pay a claim after receiving satisfactory proof of loss when "that failure to pay is arbitrary, capricious, or without probable cause." *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1020 (La. 2003).  "An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of loss." *In re Chinese Manufactured Drywall Prods. Liability Lit.*, 759 F. Supp. 2d 822, 843 (E.D. La. 2010) (citing *Reed*, 857 So. 2d at 1021).

covered claim . . . ."[15]   Whether an insurer has a duty to defend "is determined by the allegations of the plaintiff's petition [against the insured], with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage."[16]   Conversely, whether an insurer has a duty to indemnify is determined by the court's application of "the Policy to the actual evidence adduced at the underlying liability trial together with any evidence introduced in the coverage case."[17]

The parties agree that *Doerr v. Mobil Oil Corp.*[18] is the leading Louisiana case interpreting the total pollution exclusion endorsement contained in the insurance policy between Central Crude and Liberty Mutual.    In *Doerr*, the plaintiffs alleged that Mobil Oil discharged petrochemicals into the Mississippi River, and that St. Bernard Parish drew those chemicals into its drinking water system and redistributed it to users throughout the Parish.[19]  The plaintiffs, who consumed the water, filed a class action claiming personal injuries from the contaminated water.[20]  They sued St. Bernard Parish and its liability insurer, Genesis Insurance Company.[21]

Genesis moved for summary judgment, arguing that the total pollution exclusion endorsement in its insurance policy excluded coverage

---

[15] *Martco Ltd. P'Ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009) (citing *Elliott*, 949 So. 2d at 1250).  For example, one difference stems from the fact that it is "the insurer's obligation to defend suits against its insured is generally broader than its obligation to provide coverage for damage claims." *Steptore v. Masco Const. Co.*, 643 So. 2d 1213, 1218 (La. 1994).

[16] *Steptore*, 643 So. 2d at 1218.

[17] *Martco*, 588 F.3d at 877.

[18] 774 So.2d at 119.

[19] *Id.* at 122.

[20] *Id.*

[21] *Id.*

for plaintiffs' alleged damages.[22]  The trial court denied Genesis's motion, citing the policy's total pollution exclusion endorsement.[23]  The Fourth Circuit Court of Appeal reversed and dismissed the claim against Genesis.[24] The Louisiana Supreme Court, however, reversed the appellate court, reinstating the trial court's denial of summary judgment and remanding the matter to the trial court.[25]

The *Doerr* court began by overruling one of its recent decisions, *Ducote v. Koch Pipeline Co.*[26]  In *Ducote*, a contractor was cutting the grass near an ammonia pipeline when his tractor overturned, and the tractor's bushhog blade struck the pipeline, causing the release of anhydrous ammonia into the atmosphere.[27]  The plaintiffs, who inhaled the gas, sued the pipeline owner, claiming personal injury damages.[28]  The Louisiana Supreme Court held that the total pollution clause excluded coverage.[29]

In overruling *Ducote*, the court in *Doerr* engaged in a lengthy discussion about the text, history, and purpose of the total pollution exclusion.[30]  The court made clear that courts should "construe [a] pollution exclusion clause in light of its general purpose, which is to exclude coverage for ***environmental pollution***, and under such interpretation, [the] clause will not be applied to all contact with substances that may be classified as

---

[22] *Id.*

[23] *Id.* at 121.

[24] *Id.*

[25] *Id.* at 136.

[26] 730 So. 2d 432 (La. 1999).

[27] *Id.* at 435.

[28] *Id.*

[29] *Id.* at 437.

[30] *Doerr*, 774 So.2d at 122.

pollutants."[31]  Accordingly, the court held that its opinion in *Ducote*, which did not involve environmental pollution, conflicted "with the intent of the policy exclusion and disrupt[ed] the expectations of both insurers and insured."[32]

To assist courts in determining whether a case involves environmental pollution, *Doerr* provides three factors to be considered:[33]

> (1) Whether the insured is a "polluter" within the meaning of the exclusion;[34]

> (2) Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion;[35] and

---

[31] *Id.* at 135 (quoting 9 COUCH ON INS. 127:6 (3d ed. 1997)) (emphasis added).

[32] *Id.* at 127-28.

[33] *See In re Chinese Manufactured Drywall*, 759 F. Supp. 2d at 843 (stating that based "upon all three [*Doerr*] considerations," plaintiffs' claims were "outside the ambit of the Louisiana Supreme Court's concern with and focus upon environmental pollution for purposes of the exclusion"); *cf. Gaylord Container Corp. v. CNA Ins. Companies*, 807 So. 2d 864, 872 (La. App. 1st Cir. 2001) (finding that because the "pollution exclusion was designed to exclude coverage for environmental pollution only" and the insured was "not seeking defense or indemnity for suits that relate to environmental cleanup claims," it was "unnecessary [for the court] to engage in an extensive analysis of the *Doerr* three-step inquiry"); *Jones v. Francis Drilling Fluids, Ltd.*, 62 F. Supp. 2d 643, 666-70 (S.D. Tex. 2009) (analyzing Louisiana post-*Doerr* caselaw to conclude "that a lengthy analysis of [the *Doerr*] factors is not required if the type of 'pollution' alleged is so far removed from the type of 'environmental pollution' contemplated by *Doerr*").

[34] To make this determination, the factfinder may consider "the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, who the insurer typically insures, any other claims made under the policy, and any other factor." *Doerr*, 774 So.2d at 135.

[35] To make this determination, the factfinder may consider "the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the

(3) Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.[36]

Here, there is little dispute about the first two *Doerr* factors. As to the first consideration, Central Crude, a pipeline company that transports large volumes of oil, is a type of business that presents a risk of pollution, and thus is a "polluter" within the meaning of the exclusion.[37] As to the second consideration, the parties agree that crude oil is a "pollutant." With respect to the third consideration, it is undisputed that a "dispersal" or "release" of crude oil occurred; that the spill impacted four or five acres of property; that initial response activities resulted in the removal of more than 25,000 gallons of liquid; and that Central Crude has spent over one million dollars in remediation efforts.[38]

Central Crude contends that the total pollution exclusion is applicable only if the insured is found to be responsible for the release or discharge of the pollutant. It latches onto the language in *Doerr* "by the insured" to argue that Liberty Mutual is required to show that the escape of oil was the fault of Central Crude. We disagree.

---

substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor." *Id.*

[36] To make this determination, the factfinder may consider "whether the pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, whether the actions of the alleged polluter were active or passive, and any other factor." *Id.*

[37] *See Grefer v. Travelers Inc.*, 919 So. 2d 758, 768 (La. App. 5 Cir. 205) (finding that "[o]il drilling and related activities present a clear and obvious risk of pollution").

[38] *See Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 674 (M.D. La. 2019) ("Here, though the discharge was unintentional, the Court has little doubt that the amount of discharge—which caused over one-hundred, forty thousand dollars' worth of cost in remediation and clean up, constituted a 'discharge, . . . release or escape' of the pollutant." (citation omitted)).

Neither the CGL policy nor *Doerr* requires identification of the party at fault for the oil spill in determining whether the total pollution exclusion applies here.  The CGL policy's total pollution exclusion broadly precludes coverage for bodily injury or property damage that "would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The provision requires a dispersal of pollutants but makes no requirement that the party responsible for the dispersal be determined.  *Doerr*'s third factor similarly asks whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant.[39]

*Doerr* instructs courts to look at the actions of the "*alleged* polluter."[40] The allegations in the CGT Lawsuit,[41] as well as the evidence introduced in this matter on summary judgment,[42] show that Central Crude was alleged to be one of two potential parties that caused a large discharge and dispersal of crude oil.  Moreover, imposing a fault requirement for application of a total pollution exclusion in cases involving environmental pollution would run counter to the Louisiana Supreme Court's instruction in *Doerr* that pollution exclusions must be read in accordance with their general purpose "to exclude coverage for environmental pollution."[43]

---

[39] *Doerr*, 774 So.2d at 135.

[40] *Id.*

[41] The petition in the CGT Lawsuit alleged that the oil spill "could only have been [caused by] the pipelines owned and/or operated by Central Crude, Inc. or Chevron."

[42] For example, the Department of Environmental Quality identified Central Crude as the "potentially responsible party."

[43] *See Doerr*, 774 So.2d at 135.  More broadly, requiring a finding of fault impermissibly collapses the distinct questions of coverage and liability.  In *Meridian Chemicals, LLC v. Torque Logistics, LLC,* No. 18-002, 2018 WL 4656396, 6 (M.D. La. Sept. 27, 2018), a district court applying Louisiana law rejected such an attempt to conflate these issues under *Doerr*'s third factor, noting that the insured's assertion that it did not cause

The key to our discussion today is that we are persuaded that *Doerr* teaches that the total pollution clause has full application to a case, such as this, where several acres of land are covered with oil from a leak alleged, at least in part, to have been caused by the insured. The fundamental point the *Doerr* court made was that there is a material distinction between environmental pollution cases on one hand, and certain types of personal injury cases on the other.[44] The leading Louisiana Insurance Treatise also reads *Doerr* in this fashion. The author of the Treatise states, "[t]he ultimate conclusion [in *Doerr*] is that the pollution 'exclusion was designed to exclude coverage for environmental pollution only and not for all interactions with irritants or contaminants of any kind.'"[45]

The Louisiana Second Circuit Court of Appeal in *Lodwick v. Chevron*[46] similarly understood *Doerr* to be limited in this way. In that case, the defendant and its predecessors operated oil and gas production facilities on land adjacent to plaintiffs' land.[47] Plaintiffs alleged that the defendants failed to clean toxic pollutants from the production facilities which migrated and spread to plaintiffs' property.[48] Because plaintiffs' claims were based on "contamination and pollution damages"[49] that plaintiffs represented resulted from defendant's open pit and tank battery, the court found that all three *Doerr* factors were met, and held that the exclusion precluded

---

the pollution was immaterial for purposes of deciding "whether [the] policy covers the alleged loss," because "liability and causation [were] not at issue."

[44] *Doerr*, 774 So.2d at 136.

[45] 15 William Shelby McKenzie & H. Alston Johnson, III, La Civ. Law Treatise, Insurance Law and Practice § 6:15 (4th ed. 2021).

[46] 126 So. 3d at 544.

[47] *Id*. at 550-51.

[48] *Id*. at 551.

[49] *Id*. at 552.

coverage.[50]  The court noted that such a "legacy lawsuit is the exact type of case that the *Doerr* court found pollution exclusions to be applicable."[51]  The court stated:

> *Doerr* did not involve the type of claims for which the exclusion was designed; it was a personal injury case, not an environmental pollution case as alleged here.  Thus, guided by the principles set forth in *Doerr*, we find that *when long term pollution damages are alleged . . . pollution exclusions are applicable to exclude coverage*.  As stated in *Doerr*, this is the very purpose of a pollution exclusion.[52]

This case, unlike *Doerr* and *Ducote*, does not involve claims for personal injury.  Instead, the claims for which Central Crude seeks coverage involve only long-term pollution damages related to an oil spill.  As in *Lodwick*, excluding coverage in a case like this one is the very purpose of total pollution exclusion clauses.[53]

---

[50] *Id.* at 560-61.

[51] *Id.* ("Plaintiffs' allegations make it clear that all three *Doerr* factors are met—(1) [Defendant] is a 'polluter' within the policy; (2) the injury-causing substances, such as NORM, are 'pollutants' within the policy; and, (3) there was a 'discharge, dispersal, seepage, migration, release or escape' of pollutants.  In any event, we find that this legacy lawsuit is the exact type of case the *Doerr* court found pollution exclusions to be applicable.").

[52] *Id.* at 560.

[53] Louisiana case law confirms that courts have generally applied total pollution exclusions to cases that involve long-term environmental pollution claims.  *See, e.g.*, *Pro-Boll Chem. & Fertilizer Co. v. U.S. Fire & Guar. Co.*, 01-1531, 2004 WL 3494045, at 7 (W.D. La. Nov. 15, 2004) (finding that the application of a pollution exclusion clause to a case involving a toxaphene spill "fulfill[s]" the "purpose of the pollution exclusion (to strengthen environmental protection standards by imposing the full risk of loss due to personal injury or property damage from pollution upon the polluter)"); *Constance v. Austral Oil Exploration Co.*, No. 12-1252, 2016 WL 902574, at 1 (W.D. La. Mar. 3, 2016) (finding a pollution exclusion precluded a duty to defend the insured against claims alleging damage from the insured's oil and gas exploration activities); *Grefer v. Travelers Ins. Co.*, 919 So. 2d 758, 772 (La. App. 5 Cir. 2005) (reversing the trial court's finding that a pollution

No. 21-30707

In sum, the absolute pollution exclusion in Liberty Mutual's policy unambiguously excludes coverage for Central Crude's costs related to "clean up" or "remov[al]" of the crude oil, as well as for any "'property damage' which would not have occurred in whole or part but for the . . . release or escape" of the crude oil.  We therefore determine that Liberty Mutual has established the applicability of the total pollution exclusion endorsement, and thus does not owe Central Crude a duty to defend in the CGT Lawsuit, or indemnification of past or future remediation costs.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.[54]

---

exclusion in the insured's policy did not apply to claims against the insured for environmental property damage that allegedly resulted from the insured's pipe-cleaning waste products).

[54] The district court also granted summary judgment in favor of Central Crude's excess insurer, Great American Assurance Company.  However, because Central Crude failed to raise any issues related to Great American in its opening or reply brief, it has waived any potential error related to the district court's summary judgment in favor of Great American. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).  Moreover, we agree with the district court that because the Liberty Mutual policy does not provide coverage for Central Crude's claims, the Great American policy likewise does not provide coverage.